[No. B081666. Second Dist., Div. Four. May 10, 1996.]

SADIE C. KATES, Plaintiff and Respondent, v.
WORKMEN'S AUTO INSURANCE COMPANY, Defendant and
Appellant.

496

COUNSEL

Liebman, Reiner, Nachison & Walsh, Kurt U. Boyd and Kevin H. Louth for Defendant and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard and Gary M. Lape as Amici Curiae on behalf of Defendant and Appellant.

Grassini & Wrinkle and Roland Wrinkle for Plaintiff and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—Does Insurance Code section 660 extend the period of an automobile policy written with a three-month term when the insured fails to pay the premium on time after a warning that coverage will expire unless the premium is paid? We conclude that it does not. Since the trial court ruled that coverage is extended in this situation, we reverse.

### FACTUAL AND PROCEDURAL SUMMARY

This action was tried on stipulated facts and we take our summary from the stipulation of the parties. The policy at issue was purchased by Gordon Dreyer in November 1984 from Workmen's Auto Insurance Company (Workmen's) through the Hatcher Insurance Agency. It had an original policy period of November 9, 1984, to May 9, 1985. Dreyer paid the premium to renew the policy for three months, extending the coverage period to August 9, 1985, at 12:01 a.m.

On July 10, 1985, Workmen's sent Dreyer the document on which this case turns. Untitled, the form advised the insured: "To renew your policy, check one renewal payment option and return a copy of this notice with your payment for the amount shown for that option. If your payment is not received by 08/09/85 your policy cannot be renewed without a lapse in coverage." The form had a series of boxes which indicated the policy number, the August 9, 1985, expiration date of the policy, and the premium amount to be paid, respectively, for three-month, six-month, and one-year renewals. The form instructed the insured to check one of these renewal options to renew the policy.

Dreyer did not recall whether he received this notice, but he failed to pay the premium before August 9, 1985. According to its terms, the policy expired at 12:01 on the morning of that date. At 9:10 that evening, Dreyer struck pedestrian Sadie Kates. Dreyer failed to notify Workmen's of this accident.

On August 19, 1985, Workmen's sent Dreyer a notice that the policy had expired. Three days later, on August 22, 1985, Dreyer delivered a premium

check to the Hatcher Insurance Agency, which sent it to Workmen's. After receiving the check, Workmen's reinstated the policy for the period of August 23, 1985, to November 23, 1985. This period did not include the date of the accident with Kates, August 9, 1985. Later, on October 18, 1985, Workmen's sent Dreyer a notice of nonrenewal based on the fact that he had a suspended driver's license under another name.

Kates's attorney tendered her claim to Workmen's on August 25 and 28, 1985. On March 12, 1986, Workmen's notified Dreyer that it was reserving its right to deny coverage for the claim. Two weeks later, Workmen's notified Dreyer by certified mail that it was denying coverage for the accident. Kates filed a personal injury action against Dreyer on April 15, 1986 (Kates v. Dreyer (Super. Ct. L.A. County, 1986, No. C595947)).

Dreyer did not tender the defense of the Kates action to Workmen's, which did not provide a defense. In September 1990, an arbitrator appointed pursuant to Code of Civil Procedure section 1141.10 et seq., awarded Kates $250,000 in her action against Dreyer. On November 26, 1990, Dreyer filed a request for a trial de novo in that action. Kates and Dreyer reached a settlement, and on the day set for trial they jointly petitioned to withdraw the request for trial de novo and to reinstate the arbitration award. The court granted the petition, and its minute order notes that the case was settled by stipulation that the arbitration award be reinstated. Dreyer assigned any claim or cause of action he had against Workmen's to Kates in exchange for a covenant not to execute on the arbitration award. In April 1991, the trial court in the Kates action entered judgment for Kates and against Dreyer for $250,000 plus interest. Workmen's was not notified of this settlement and did not consent to it.

In March 1992, Kates brought the present action for failure of Workmen's to pay the judgment against its insured; for breach of insurance contract; for wrongful refusal to defend; and for breach of the covenant of good faith and fair dealing. The case was tried to the court on stipulated facts and exhibits. After giving counsel an opportunity to comment on a tentative statement of decision, the trial court issued an order on request for statement of decision and its statement of decision. The trial court concluded that there was coverage under the policy because Workmen's failed to send a notice of cancellation to Dreyer pursuant to Insurance Code sections 661 and 662. (All further statutory references are to the Insurance Code unless otherwise indicated.) The court awarded Kates the policy limits of $100,000 on the first and second causes of action. As to the cause of action for breach of the duty to defend, the trial court rejected Workmen's argument that the assignment of the cause of action to Kates was invalid. The trial court also rejected

its argument that the withdrawal of the notice of trial de novo was ineffective, rendering the assignment invalid. Based on these conclusions, the trial court awarded judgment for Kates on the third cause of action in the amount of the arbitration award, $250,000, plus costs and postjudgment interest. On Workmen's request for reconsideration, the trial court clarified the judgment to state that the total principal amount recovered by Kates is $250,000. Judgment in that amount plus costs and interest was entered in favor of Kates on November 19, 1993. Workmen's filed a timely notice of appeal from the judgment.

## DISCUSSION

We are asked to interpret provisions of chapter 10 of division 1, part 1 of the Insurance Code, which govern the renewal, nonrenewal and cancellation of noncommercial automobile insurance policies. (§§ 660-669.5.) The sections relevant to this case are 660-663, as they read in 1985.

Section 660 defines the terms used in chapter 10. Subdivision (e) provided in relevant part: " 'Renewal' or 'to renew' means to continue coverage with either the insurer which issued the policy or an affiliated insurer, . . . for an additional policy period upon expiration of the current policy period of a policy, . . . and the insured shall be notified in writing at least 20 days prior to expiration of the current policy period of all of the following: (1) That the insurer has determined that it will *not offer renewal* of the policy with the present insurer, (2) That it is offering replacement in an affiliated insurer, and (3) That the insured may obtain in writing the reasons for the change in insurers if he or she requests in writing not later than one month following the expiration of the policy period the reason or reasons for the change in insurers." (Italics added.)

The language relied upon by the trial court in finding coverage appears in the same subdivision: "Any policy with a policy period or term of six months or less, whether or not made continuous for successive terms upon the payment of additional premiums, shall for the purpose of this chapter be considered as if written for a policy period or term of six months." (§ 660, subd. (e).)

Section 660 also defines three alternative means by which coverage under a policy may be discontinued: cancellation, nonrenewal, and expiration. Subdivision (g) defines " 'Cancellation' " as "termination of coverage by an insurer (other than termination at the request of the insured) during a policy period." Subdivision (h) defines " 'Nonrenewal' " as "a notice by the insurer to the named insured that the insurer is unwilling to renew a policy." Finally,

subdivision (i) defines " 'Expiration' " as "termination of coverage by reason of the policy having reached the end of the term for which it was issued *or the end of the period for which a premium has been paid.*" (Italics added.) The Legislature thus created two methods by which a policy may expire, one based on the term for which the policy was written and the second based on the period for which the premium has been paid. This distinction is significant, as we shall explain.

Section 661 provides the grounds for a valid notice of cancellation of the policy by the insurer, including nonpayment of a premium. Section 662 specifies requirements for mailing or delivering a notice of cancellation to the insured. Under that section, where the basis of cancellation is nonpayment of premium, at least 10 days' notice of cancellation, with a statement of the reason, must be given.[1]

Section 663 was reorganized in 1986 and amended again in 1990. In 1985, when the events relevant to this case occurred, the section required notice of renewal or nonrenewal: "An insurer shall offer renewal of a policy, contingent upon payment of premium as stated in the offer, to an insured unless the insurer mails or delivers to the named insured, at the address shown in the policy, at least 20 days advance notice of nonrenewal." The section also provided for notice upon request by the insured of the reason or reasons for nonrenewal and for termination of the policy upon the effective date of a replacement or succeeding policy, despite the insured's failure to comply with the notice requirements. Former section 663 concluded: "The insurer shall not be required to notify the named insured, or any other insured, of nonrenewal of the policy if the insurer has mailed or delivered a notice of expiration or cancellation, on or prior to the 20th day preceding expiration of the policy period."

Kates's position in the trial court and here is based on the following reasoning: (1) Dreyer's policy had a term of three months; (2) under section 660, subdivision (e), a three-month policy must be treated as a six-month policy; (3) therefore, the policy was in effect on August 9, 1985, a date beyond the three-month term but within the six-month period; (4) coverage could have been terminated before August 9, 1985, only by a proper notice of cancellation; (5) the July 10, 1985, notice sent by Workmen's did not constitute a notice of cancellation; hence (6) coverage was in effect on August 9, 1985, when the accident occurred.

---

[1]Both sections 661, subdivision (d) and 662 provide that they do not apply to nonrenewal. No one argues that the lack of a specific statement that these provisions do not apply to expiration means that a cancellation notice is mandatory where policy premiums have not been paid. It is evident that sections 661 and 662 do not apply to expiration of a policy for nonpayment of premium.

Workmen's position is that section 660 subdivision (e) does not apply because the policy expired when Dreyer failed to pay the premium due by the expiration date, August 9, 1985. It further argues that it satisfied statutory requirements by sending Dreyer an offer to renew under section 663, more than 20 days before expiration of the policy. Therefore, it concludes, coverage expired at 12:01 on August 9, 1985, some 17 hours before Dreyer struck Kates.

Amicus curiae counsel take a somewhat different tack. They argue that the notice sent on July 10, 1985, constituted both an offer to renew and notice of expiration, which terminated coverage at the end of the period for which the premium was paid.

■ " '[O]ur first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose . . . . The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] In sum, ' "[r]ules of statutory construction require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences." ' [Citation.]" (*Quintano* v. *Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055 [48 Cal.Rptr.2d 1, 907 P.2d 1057].)

■ The principal issue in this case is whether section 660, subdivision (e) extended coverage under Dreyer's policy to this accident. The passage at issue is part of the definition of "renewal." It states that a short-term policy is to be considered as if written for a *"policy period or term"* of six months. (§ 660, subd. (e).) We agree with the trial court that this language is ambiguous when read by itself. We turn to the other sections of the chapter in an effort to harmonize all of the provisions that bear on the issue. We note that the parties agree that Workmen's did not send a notice of nonrenewal to Dreyer prior to August 9, 1995. We therefore need not and do not address the nonrenewal provisions of chapter 10.

As we have seen, the Legislature drew a distinction in chapter 10 between renewal, nonrenewal, cancellation, and expiration of an automobile insurance policy. Here we address the impact of the insured's failure to pay the

premium on time after receiving a notice of renewal clearly advising that the policy will expire unless the premium is paid.

Section 660, subdivision (i) provides that a policy may expire when either of two events occurs: the policy reaches the end of the term for which it was issued, or the end of the period for which a premium has been paid. Because Dreyer failed to pay the premium, the second event described in section 660, subdivision (i) occurred. Read alone, section 660, subdivision (i) mandates a conclusion that Dreyer's policy expired at 12:01 a.m. on August 9, 1985.

But Kates argues that the policy did not expire because of the provision in section 660, subdivision (e) which directs us to treat the policy as if written for a six-month term for purposes of chapter 10. We are satisfied that the Legislature did not intend this provision to extend coverage for a period for which no premium has been paid where the insured had been sent a timely warning that coverage would end unless the premium was paid. We base this conclusion on the legislative history of chapter 10, which we next review.

On July 1, 1974, the Court of Appeal construed a former version of chapter 10 in *State Farm Mut. Auto. Ins. Co.* v. *Brown* (1974) 40 Cal.App.3d 385 [115 Cal.Rptr. 213]. In that case, the insureds were involved in an automobile accident on January 11, 1971. The original policy period expired on June 19, 1968, and was renewable for six-month periods upon payment of the applicable premium. On November 18, 1970, 30 days before the end of the current policy period, State Farm sent the Browns a notice entitled "Semiannual Premium Notice." In it, the Browns were advised that a premium payment was due December 19, 1970, in order to continue the policy for the next six-month period. (*Id.* at p. 389.) The Browns did not pay the premium. On December 21, 1970, State Farm mailed them an expiration notice, which stated that the policy had expired on December 19, but could be reinstated as of the policy due date by payment within 10 days of December 19. (*Id.* at p. 390.) On January 11, 1971, after receiving no payment from the Browns, State Farm sent a "final lapse notice" which again informed them that the policy had expired, showed December 19, 1970 as the policy due date, and offered to reinstate the policy upon payment of the premium within 40 days of that date. The *Brown* court held that the policy was extended to cover the accident on January 11, 1971, because State Farm failed to give a notice of cancellation of the policy under former section 661. (40 Cal.App.3d at p. 398.)

The month after *Brown* was decided, the Association of California Life Insurance Companies sponsored legislation to address the issue it discussed.

The proposed legislation, enacted as chapter 982 of the Statutes of 1974 (Assem. Bill No. 318 (1973-1974 Reg. Sess.)), repealed the provisions relied upon in *Brown*; amended section 660, subdivision (e) with respect to renewal; added the definitions of "cancellation" (§ 660, subd. (g)); "nonrenewal" (§ 660, subd. (h)); and "expiration" (§ 660, subd. (i)); and rewrote section 663.

The legislative history makes it clear that Assembly Bill No. 318 was intended to avoid an insurer's liability for any period beyond that covered by the last premium payment. An analysis of the August 15, 1974, version of Assembly Bill No. 318 prepared by the Senate Committee on Insurance and Financial Institutions warned that as then written, the bill would require insurers to send a notice of nonrenewal at least 20 days in advance of the expiration of the policy period "regardless of whether or not the insured has failed to discharge when due any premium payment." (Sen. Com. on Insurance and Financial Institutions, Analysis of Assem. Bill No. 318 (1973-1974 Reg. Sess.) as amended Aug. 15, 1974.)

The bill was amended on August 26, 1974. At that time, section 660, subdivision (i), defining expiration, was added to the bill. The August 26 amendments also added the following italicized language to the new version of section 663: "An insurer shall offer renewal of a policy, *contingent upon payment of premium as stated in the offer*, to an insured unless the insurer mails or delivers to the named insured, at the address shown in the policy, at least 20 days advance notice of nonrenewal." (Sen. Amend. to Assem. Bill No. 318 (1973-1974 Reg. Sess.) Aug. 26, 1974.) The bill was enacted in that form.

We conclude these two amendments were intended to make it clear that under chapter 10, an automobile policy will expire if the insured does not make a timely premium payment. That construction is consistent with analyses prepared for the Governor. (See *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1399 [241 Cal.Rptr. 67, 743 P.2d 1323] [enrolled bill reports prepared for Governor as indicative of legislative intent in interpretation of statute].) An Enrolled Bill Memorandum prepared by the Governor's Legislative Secretary stated: "Provides for expiration of an auto insurance policy without a notice of nonrenewal. This bill provides for an expiration at the end of the term, and a notice of expiration (or cancellation) with an offer to renew upon payment of premium. Such notice would not force an automatic renewal." (Governor's Legis. Sect., Enrolled Bill Mem., Assem. Bill No. 318 (1973-1974 Reg. Sess.) Sept. 12, 1974.)

An Enrolled Bill Report prepared by the Department of Consumer Affairs states: "AB 318 is meant as a technical bill for the purpose of clarifying the

Insurance Code. The Code is clarified to read that the offer by the insured to renew a specified policy is *contingent upon* payment of premium as stated in the offer to renew. *Such clarification is considered necessary to guard against an insurance company being held liable for damages occurring in an accident after such time as expiration of a policy occurs.* If no payment of premium occurs after notice of offer to renew is received, and if the policy date of expiration arrives, and if policy holder is involved in an accident subsequent to the expiration date, then the insurance company is apparently held to be liable for damages up to 10 days after the expiration of the policy under a recently rendered court decision in *State Farm v. Brown. Hence this clarification is suggested to, in effect, guard against a requirement for insurance companies to provide 10 days free insurance subsequent to policy expirations.*" (Cal. Dept. Consumer Affairs, Enrolled Bill Rep., Assem. Bill No. 318 (1973-1974 Reg. Sess.), Sept. 18, 1974, italics added.)

Finally, an Enrolled Bill Report to the Governor, prepared by the Department of Insurance stated: "This bill, intended to overcome the effect of the Brown case, provides for an expiration at the end of the term, and a notice of expiration (or cancellation) with an offer to renew upon payment of premium. Such notice would not force an automatic renewal." (Cal. Dept. of Ins., Enrolled Bill Rep., Assem. Bill No. 318, (1973-1974 Reg. Sess.) Sept. 11, 1974.)

■ With this statutory history to guide us, we construe chapter 10 to mean that, when an insurer sends a timely notice of renewal which provides that continued coverage is contingent on payment of the premium before the end of the period for which the current premium has been paid, and the insured fails to make that payment, the coverage expires at the end of that period. At that point, there is no further coverage. The insurer is not required to give notice of cancellation under sections 661 and 662, or notice of nonrenewal under section 663, in order to avoid liability for any claim arising after the expiration of the policy. The reason is that, in this situation, there is neither a nonrenewal nor a cancellation. There simply is an expiration.

■ It remains to consider the question that bedeviled the trial court: if, upon proper notice in advance, coverage ends when the policy expires, what is the purpose of the language in section 660, subdivision (e) which states

that policies written for a term less than six months are to be treated as though written for a six-month term?[2]

We return to the language of section 660, subdivision (i), which was added in 1974. That subdivision provides: " 'Expiration' means termination of coverage by reason of *the policy having reached the end of the term for which it was issued* or the end of the period for which a premium has been paid." (Italics added.) We note that the passage at issue in subdivision (e) was already a part of the statute when the 1974 amendments were enacted. As we have discussed, that critical passage focuses on the policy period in providing that any policy with a term of six months or less "shall for the purpose of this chapter *be considered as if written for a policy period or term of six months*." (Italics added.) Reading all pertinent provisions of chapter 10 together, we conclude that the effect of this provision is to extend the policy period to a six-month term for purposes of determining the date of expiration under the first clause of section 660, subdivision (i). The effect of subdivision (e) is to bring all short-term automobile insurance policies within the scope of that subdivision; it was not intended to confer rights to automatic extension of coverage where premiums are not paid.

Under this construction, a policy written for a three-month period ending June 1, would not expire until September 1, so long as the insured makes all premium payments on time. The passage in section 660, subdivision (e) is silent as to the impact of the insured's failure to pay the premium. That eventuality is covered by section 660, subdivision (i).

In her argument for coverage, Kates relies heavily on our earlier opinion in *National Auto. & Casualty Ins. Co.* v. *California Casualty Ins. Co.* (1983) 139 Cal.App.3d 336 [188 Cal.Rptr. 670] in urging us to construe the statutory scheme to avoid short-term coverage lapses which occur (as stated in the caption of the argument) " 'As The Result Of The Often Confusing Churning Of Paperwork That Accompanies Repetitive Short-Term Contracts.' " In *National Automobile,* a six-month automobile policy was written for a term that ended on July 26, 1979. The named insured died during this period, and on July 31, 1979, the insurer sent notice that the policy had lapsed as of July 26, 1979 due to nonpayment of premium. The insurer offered to renew the policy if the premium was paid by August 12, 1979. No premium payment was received, and on August 4, 1979, an additional insured under the policy was involved in an accident. On August 20, 1979,

---

[2]We are not provided with a legislative history of this provision, which was added in 1968. (Stats. 1968, ch. 137, § 2, p. 352.)

the insurer sent a notice of cancellation, purporting to be effective July 26, 1979.

We concluded that the failure of the insurer to cancel or elect not to renew the policy more than 20 days prior to the accident automatically extended the coverage. (*National Auto. & Casualty Ins. Co.* v. *California Casualty Ins. Co., supra*, 139 Cal.App.3d at p. 340.) The purpose of the notice periods provided in sections 662 and 663, we concluded, is to give the insured "advance notice of the expiration, termination, cancellation, or nonrenewal of automobile insurance, with enough time for renewal of that coverage or acquisition of other coverage. Public policy certainly favors a system under which motorists will not be operating their vehicles without the benefit of public liability coverage." (139 Cal.App.3d at pp. 340-341.) Our opinion agreed with *Brown* as to automatic renewal under section 663 when no notice is given. (139 Cal.App.3d at p. 341.) We did so, however, without discussion of the amendments to the statute after *Brown* was decided, and which were aimed at changing the effect of that decision. The case also is distinguishable because no notice had been sent that the policy would expire unless a renewal payment was made within the policy period. As we have discussed, in our case Workmen's satisfied section 663 by sending Dreyer a notice of renewal, warning him that coverage would expire unless the premium was paid before August 9, 1985.

We find our decision in *Fujimoto* v. *Western Pioneer Ins. Co.* (1978) 86 Cal.App.3d 305 [150 Cal.Rptr. 88] more persuasive. In that case, the policy was written for a six-month period. Consequently, the passage of section 660, subdivision (e) which we have discussed did not apply. On May 20, 1976, the insurer mailed a notice to Mr. Fujimoto informing him that the next premium payment was due on June 21, 1976. The notice warned: " 'Payment must be received by the company before the due date indicated above. In the event payment is not received by this date, your policy becomes null and void in accordance with Condition 1 of the policy insuring agreements.' " (86 Cal.App.3d at p. 309.) Condition 1 of the policy provided that the policy would terminate if no payment was made on the date payment was due. Mr. Fujimoto fell ill and eventually died. His wife, an insured under the policy, mailed the premium payment on June 22, 1976. It was received by the insurer on June 25, 1976. In the meantime, on June 23, 1976, Mrs. Fujimoto was involved in an accident with a pedestrian. (*Ibid.*)

We concluded that the policy did not cover the accident with the pedestrian. We held that the notice sent by the insurer on May 20, 1976, constituted an offer to renew in compliance with section 663. Mrs. Fujimoto relied

upon *Brown* in arguing that coverage was extended to cover the accident. We rejected that argument because the version of section 663 relied upon by the court in *Brown* had been repealed and reenacted by the 1974 legislation, in which the statutory language was changed. (*Fujimoto v. Western Pioneer Ins. Co.*, *supra*, 86 Cal.App.3d at p. 312.) We relied on the language in section 663 providing: " 'An insurer shall offer renewal of a policy, contingent upon payment of premium *as stated in the offer . . . ,*' " (86 Cal.App.3d at p. 312, citing *State Farm Mut. Auto. Ins. Co.* v. *Brown, supra*, 40 Cal.App.3d 385, 396-397) in holding: "The plain meaning of the provision of section 663 quoted above is that the failure of an insured to pay a premium on or before the date specified in the renewal offer will result in termination of the policy." (86 Cal.App.3d at p. 312.)

Finally, the construction we reach avoids putting insurers in the position of being at risk on a policy that expired under its own terms upon failure of the insured to pay the premium for renewal, after warning that coverage would end unless the premium was paid. The construction urged by respondent would force the carrier to cover risks for which it is not paid, until it is able to terminate the policy through the cancellation provision of the code. We believe that to be an incongruous result, one the Legislature is hardly likely to have intended. Indeed, it is precisely the result the Legislature sought to avoid by its 1974 amendment to the statute.

To summarize, we construe chapter 10 as follows: (1) unless the insurer seeks to terminate coverage under a policy, it must give the insured notice of renewal, contingent on payment of premium, at least 20 days prior to policy expiration under section 663; (2) if such notice is given and the insured fails to pay the premium by the due date, the policy expires pursuant to section 660, subdivision (i) and no further notice is required; and (3) while nonpayment of premium is a basis for cancellation of a policy under section 661, the cancellation provisions do not apply if the policy has expired under section 660, subdivision (i).

It follows that the trial court erred in holding that Workmen's was required to send Dreyer a notice of cancellation under sections 661 and 662. Dreyer's policy expired at 12:01 a.m. on August 9, 1985, when he failed to

pay his premium. There was no coverage under the policy when he hit Kates.[3]

DISPOSITION

The judgment is reversed. Appellant is to have its costs on appeal.

Hastings, J., and Rubin, J.,* concurred.

A petition for a rehearing was denied June 10, 1996.

---

[3]In light of our conclusion, we need not reach the merits of the arguments regarding the validity of the assignment of Dreyer's rights to Kates and of the stipulated judgment entered after withdrawal of the notice of trial de novo. We observe that this assignment of rights was made after a neutral arbitrator assessed the merits of Kates's action and determined that she should be awarded $250,000. (See *Pruyn* v. *Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 522 [42 Cal.Rptr.2d 295] [well-established rule is that upon breach of duty to defend, insured may assign cause of action against insurer to third party claimant in absence of fraud and collusion].)

*Judge of the Municipal Court for the Santa Monica Judicial District sitting under assignment by the Chairperson of the Judicial Council.