## NANCY STENSON *v.* NORTHLAND INSURANCE COMPANY
## (14785)

Dupont, C. J., and Spear and Hennessy, Js.

Argued February 26—officially released July 16, 1996

*Donna Civitello*, with whom, on the brief, was *Robert F. Carter*, for the appellant (plaintiff).

*James G. Geanuracos*, with whom, on the brief, was *Brad N. Mondschein*, for the appellee (defendant).

DUPONT, C. J. At the joint request of the parties, the trial court granted a motion for reservation[1] to have this court resolve questions concerning the construction and application of General Statutes (Rev. to 1989) § 38-175f.[2]

The parties stipulated to the facts that follow. The defendant issued Leroy Jordan a personal automobile

[1] Practice Book § 4147 provides in relevant part: "A reservation shall be taken . . . to the appellate court from those cases in which an appeal could have been taken directly . . . to the appellate court . . . had judgment been rendered. . . .

"All questions presented for advice shall be specific and shall be phrased so as to require a Yes or No answer.

"The court will not entertain a reservation for its advice upon questions of law arising in any action unless the question or questions presented are . . . reasonably certain to enter into the decision of the case, and it appears that their present determination would be in the interest of simplicity, directness and economy of judicial action."

[2] General Statutes (Rev. to 1989) § 38-175f, now § 38a-341, provides in relevant part: "Cancellation of motor vehicle liability policy: Definitions. As used in sections 38-175f to 38-175*l*, inclusive . . . 'renewal' or 'to renew' means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of the policy beyond its policy period or term, provided any policy with a policy period or term of less than six months shall, for the purpose of sections 38-175f to 38-175*l*, inclusive, be considered as if written for a policy period or term of six months and any policy written for a term longer than one year or any policy with no fixed expiration date, shall for the purpose of said sections, be considered as if written for successive policy periods or terms of one year, and such a policy may be terminated at the expiration of any annual period upon giving thirty days' notice of cancellation prior to the anniversary date, and such cancellation shall not be subject to any other provisions of said sections . . . ."

Title 38 of the General Statutes (Rev. to 1989) was transferred, and its sections renumbered, to title 38a of the General Statutes (Rev. to 1991). Because title 38 was in effect at the time the plaintiff sustained her injuries, for purposes of this opinion, we shall refer to the relevant statutes in their previous numerical form under title 38.

insurance policy with a policy period running from 12:01 a.m., August 25, 1989, through 12:01 a.m., November 25, 1989. On or about October 23, 1989, a renewal offer was mailed to Jordan. Jordan renewed his policy for an additional three month period, extending coverage from 12:01 a.m., November 25, 1989, through 12:01 a.m., February 25, 1990. On January 22, 1990, the defendant mailed a renewal offer to Jordan. Jordan did not renew his policy, and on February 26, 1990, the defendant mailed a notice of expiration by regular mail to Jordan. The reason given for the termination was the failure of Jordan to tender the premium for another three month policy.

On February 27, 1990, the plaintiff, while a passenger in an automobile driven by Jordan, was injured in an accident and sustained a cervical fracture. As of that date, the plaintiff did not own an automobile and had neither automobile insurance nor health insurance of her own. By letter dated March 19, 1991, the plaintiff advised the defendant of her injuries. By letter dated March 26, 1991, the defendant advised the plaintiff that it would not honor her claims for damages because Jordan's policy had not been renewed. The plaintiff brought a civil action against Jordan in the Superior Court. On October 1, 1991, judgment was rendered in favor of the plaintiff in the amount of $325,000. The judgment against Jordan remains entirely unsatisfied. In the present action, the plaintiff seeks damages from the defendant pursuant to General Statutes (Rev. to 1989) § 38-175.[3] She claims that Jordan's policy was in

---

[3] General Statutes (Rev. to 1989) § 38-175, now § 38a-321, provides: "Liability of insurer under liability policy. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such

effect on the date of the accident because the defendant failed to send, via certified or registered mail, notice of cancellation at least ten days prior to termination and that, therefore, she is entitled to recover under the policy.

The questions reserved to this court are (1) did the provisions of § 38-175f require the defendant to send Jordan a cancellation notice in accordance with General Statutes (Rev. to 1989) § 38-175h,[4] and (2) was Jordan's

contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment."

[4] General Statutes (Rev. to 1989) § 38-175h, now § 38a-343, provides: "Receipt of cancellation notice. Reason for cancellation. (a) No notice of cancellation of policy to which section 38-175g applies may be effective unless sent, by registered or certified mail or by mail evidenced by a certificate of mailing, or delivered by the insurer to the named insured at least forty-five days before the effective date of cancellation, provided where cancellation is for nonpayment of premium at least ten days' notice of cancellation accompanied by the reason therefor shall be given. No notice of cancellation of a policy which has been in effect for less than sixty days may be effective unless mailed or delivered by the insurer at least forty-five days before the effective date of cancellation, provided that at least ten days' notice shall be given where cancellation is for nonpayment of premium or material misrepresentation. The notice of cancellation shall state or be accompanied by a statement specifying the reason for such cancellation.

"(b) This section shall not apply to nonrenewal."

General Statutes (Rev. to 1989) § 38-175g, now § 38a-342, provides: "Bases for cancellation. (a) A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons: (1) Nonpayment of premium; (2) the driver's license or motor vehicle registration of either the named insured or any operator either resident in the same household or who customarily operates an automobile insured under the policy has

policy in force on February 27, 1990? We answer both of the questions reserved in the affirmative.

The resolution of these questions requires an analysis of the various statutes that govern cancellation, renewal and nonrenewal of insurance policies and that provide the methods by which insurers must notify their insureds in case of such an event, as well as an analysis of which of these statutes apply to the circumstances of this case. The first subsidiary question to be resolved is whether we are involved with a renewal or a cancellation of an insurance policy. If the defendant cancelled the policy, notice should have been given in accordance with § 38-175h, but if the defendant gave notice to renew the policy, then such notice should have been given in accordance with General Statutes (Rev. to 1989) § 38-185w.

Cancellation of an automobile liability insurance policy is carefully regulated by General Statutes (Rev. to 1989) §§ 38-175f through 38-175*l*. Pursuant to § 38-175f, "any policy with a policy period or term of less than six months shall, for the purpose of sections 38-175f to 38- 175*l*, inclusive, be considered as if written for a policy period or term of six months . . . ." Cancellation of a policy during the policy period due to nonpayment of the premium requires specific notice sent by registered or certified mail or by mail evidenced by a certificate of mailing at least ten days before the effective date of cancellation. General Statutes § 38-175h. Subsection (b) of § 38-175h provides: "This section shall not apply to nonrenewal." The procedures for renewal and nonrenewal are set forth in General Statutes (Rev.

been revoked during the policy period or, if the policy is a renewal, during its policy period or the one hundred eighty days next preceding its effective date.

"(b) This section shall not apply to any policy issued under an automobile residual market mechanism or to any policy or coverage which has been in effect less than sixty days at the time notice of cancellation is mailed or delivered by the insurer unless it is a renewal policy or to nonrenewal."

to 1989) § 38-185w[5] and require insurers that refuse to renew a policy to send notice of their intention not to renew, via certified or registered mail or mail evidenced by a certificate of mailing, at least sixty days prior to the expiration of the policy period. Subsection (b) of § 38-185w requires an insurer to mail or deliver a premium billing notice to its insured not less than thirty days in advance of the policy's renewal date when an insurer offers to renew a policy.

The determinative issue in this reservation is whether an automobile liability insurance policy issued for a policy period of less than six months is, by virtue of the statutory provision set forth in § 38-175f, to be "considered as if written for a policy period or term of six months," and, therefore, is not subject to cancellation

---

[5] General Statutes (Rev. to 1989) § 38-185w, now § 38a-323, provides in relevant part: "Notice of nonrenewal and premium billing for personal and commercial risk insurance policies. Applicable to surplus lines insurers. (a) On or after October 1, 1986, no insurer shall refuse to renew any policy which is subject to the requirements of chapter 682a unless such insurer or its agent shall send, by registered or certified mail or by mail evidenced by a certificate of mailing, or deliver to the named insured, at the address shown in the policy, at least sixty days' advance notice of its intention not to renew. The notice of intent not to renew shall state or be accompanied by a statement specifying the reason for such nonrenewal. This section shall not apply: (1) In case of nonpayment of premium; or (2) if the insured fails to pay any advance premium required by the insurer for renewal, provided, notwithstanding the failure of an insurer to comply with this subsection, with respect to automobile liability insurance policies the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.

"(b) On or before September 30, 1987, a premium billing notice for any policy subject to the requirements of chapter 682a, except a workers' compensation policy, shall be mailed or delivered to the insured by the insurer or its agent not less than forty-five days in advance of the renewal date or the anniversary date of the policy. On or after October 1, 1987, such notice shall be so mailed or delivered to the insured not less than thirty days in advance of the policy's renewal or anniversary date. The premium billing notice shall be based on the rates and rules applicable to the ensuing policy period. The provisions of this subsection shall apply to any such policy for which the annual premium was less than fifty thousand dollars for the preceding annual policy period."

during the six month policy period except for the reasons and by the mandated procedures set forth in §§ 38-175f through 38-175*l*. The defendant claims that at no time was it required to mail a cancellation notice in accordance with § 38-175h because it never cancelled or attempted to cancel Jordan's insurance policy. Instead, the defendant claims that it attempted to renew Jordan's insurance policy pursuant to § 38-185w (b) by mailing a renewal offer more than thirty days in advance of the policy's renewal date and that Jordan failed to renew the policy. We disagree.

The provision set forth in § 38-175f is clear and unambiguous. It simply provides that if a policy is issued for a policy period or term of less than six months, the policy period is nonetheless deemed, as a matter of law, to be a six month policy. It is well established that "[t]he meaning to be given a statute is determined by legislative intent and that legislative intent must be determined by language actually used in the legislation." *Eason* v. *Welfare Commissioner*, 171 Conn. 630, 634, 370 A.2d 1082 (1976), cert. denied, 432 U.S. 907, 97 S. Ct. 2953, 53 L. Ed. 2d 1079 (1977). When the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987).

The definition of renewal in § 38-175f precludes renewal prior to the expiration of a six month policy period and, by that definition, makes cancellation the only means of terminating an auto insurance policy prior to the expiration of six months of coverage. See *Taylor* v. *MFA Mutual Ins. Co.*, 334 So. 2d 402 (La. 1976); *Conover* v. *Dairyland Ins. Co.*, 200 Neb. 715, 265 N.W.2d 222 (1978); contra *Kates* v. *Workmen's Auto Ins. Co.*, 45 Cal. App. 4th 494, 52 Cal. Rptr. 852 (1996). The defendant asks this court to ignore the specific

definition of a renewal of a motor vehicle liability policy provided in § 38-175f, and to rely instead on the provisions of § 38-185w governing the renewal of all types of property and casualty insurance. However, "[i]t is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling." (Internal quotation marks omitted.) *Plourde* v. *Liburdi*, 207 Conn. 412, 417, 540 A.2d 1054 (1988).

Section 38-175f specifically deals with motor vehicle insurance policies issued for less than six months and that statute must control. On the basis of the foregoing analysis, we conclude that § 38-175f required the defendant to tender notice of cancellation to Jordan in accordance with § 38-175h if it wanted to terminate coverage prior to the expiration of the statutory six month policy period as a result of Jordan's failure to pay a renewal or continuation premium. Moreover, the defendant's failure to tender the requisite notice prevented the subject insurance policy from expiring on February 25, 1990.

The defendant argues, in the alternative, that even if § 38-175f converts the defendant's three month automobile liability policy to a six month policy for purposes of §§ 38-175f through 38-175*l*, it still was not required to send Jordan notice of cancellation because the original three month policy plus the three month renewal policy, created a policy of six months duration which expired on February 25, 1990, due to Jordan's failure to pay the required renewal or continuation premium. We disagree and conclude that the defendant issued Jordan two separate and distinct three month policies.

The declarations page of Jordan's automobile liability insurance policy reveals that the defendant designated the policy period or term as a three month period from

August 25, 1989, through November 25, 1989. The declarations page also reveals that Jordan paid a "total full term premium" of $157. Moreover, the original policy expressly provided that "[t]his policy will automatically terminate at the end of the current policy period." We therefore conclude that Jordan's renewal of his original policy was a separate and distinct contract providing coverage for a policy period or term of three months. See *Back* v. *Peoples National Fire Ins. Co.*, 97 Conn. 336, 344, 116 A. 603 (1922); *Phelan* v. *Everlith*, 22 Conn. Sup. 377, 379, 173 A.2d 601 (1961); *Small Agency, Inc.* v. *Dugay*, 4 Conn. Cir. Ct. 710, 712, 239 A.2d 553 (1967).

The legislature has decided that insurance policies issued for less than six months are to be treated as six month policies and that if an insurer wants to terminate coverage under the policy prior to the expiration of six months, then it must comply with the cancellation procedures set forth in §§ 38-175f through 38-175*l*. This legislative framework, which protects those to whom short term policies are issued, means that unless a policy is cancelled in accordance with §§ 38-175f to 38-175*l*, the lapse date of such a policy is the end of the statutory term, here six months, rather than the actual policy term, here three months.[6] The legislature's will is simply that short term policies are to be governed by the more arduous notice provisions requiring specific notice sent by registered or certified mail or evidenced by a certificate of mailing at least ten days before the effective date of cancellation and that termination of policies of six months or more duration, upon the natural expiration of the term, are subject to the simpler procedural requirements of nonrenewal set forth in § 38-185w. Because the defendant sought to terminate coverage under the policy prior to the expiration of the policy's statutorily imposed six month term, compli-

---

[6] We are not here concerned with policies issued for terms less than three months.

ance with the cancellation procedures set forth in §§ 38-175f through 38-175*l* is mandatory.

To the reserved question—Did the provisions of General Statutes (Rev. to 1989) § 38-175f require Northland Insurance Company to send its insured Leroy Jordan a cancellation notice, in accordance with General Statutes (Rev. to 1989) § 38-175h, regarding policy number PA0025821, which was effective from August 25, 1989, through November 25, 1989, and renewed from November 25, 1989, through February 25, 1990, when Jordan failed to renew said policy prior to February 25, 1990, in response to a timely premium billing notice mailed by Northland Insurance Company on January 22, 1990, in accordance with General Statutes (Rev. to 1989) § 38-185w (b)—our answer is yes.

To the reserved question—Was policy number PA0025821 issued by Northland Insurance Company to Leroy Jordan on August 25, 1989, and renewed by Jordan for renewal period of November 25, 1989, through February 25, 1990, in force on February 27, 1990—our answer is yes.

No costs will be taxed to either party.

In this opinion the other judges concurred.