[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTIONS FOR SUMMARY JUDGMENT
This subrogation action arises out of a motor vehicle accident occurring on October 2, 1999 between an automobile owned by Anna London and operated by Nigel Garcia and an automobile owned by the defendants Jose and Soma Torres and operated by the defendant Iovanna Elias. Because it was claimed that neither the Torreses nor Elias carried liability insurance, Safeco paid Garcia and Butler uninsured motorist benefits and London collision benefits. In count one, Safeco attempts to recover for those payments from the defendants. In count two, Safeco sues the defendant Allstate Insurance Company which it claims had a policy of auto insurance covering the defendant and on which Allstate refused to pay.
Both Safeco and Allstate have filed motions for summary judgment on the second count. Allstate claims that it has no obligations because it had canceled its policy on the defendants prior to the accident. Safeco claims that the cancellation was ineffective. The similar motions for summary judgment were previously argued to Judge Trial Referee Wagner. In a memorandum dated October 25, 2002, Judge Wagner denied summary judgment. At the time of the argument before Judge Wagner, certain facts were in dispute and claims of waiver were being advanced which made the matter inappropriate for summary judgment.
Subsequent to Judge Wagner's decision, the parties at argument to this court agreed upon the essential facts and withdrew any claims of waiver. The parties are in agreement that the sole issue before the court is the effectiveness of Allstate's purported cancellation of a policy which would have covered the named defendants.
Selma Torres purchased a policy of automobile insurance from Allstate on June 18, 1997, paying $347.95 on that date and agreeing to make monthly payments of $273.65 commencing on July 18, 1997 and on the 18th day of each succeeding month. Ms. Torres made the July payment in a timely manner but did not mail her August payment of $274.00 until August 28, 1997. On August 30th, Allstate sent a notice of cancellation to Ms. CT Page 16416 Torres requiring her to pay both the August payment and the payment due on September 18, 1997 if she was to avoid cancellation. Allstate received the August payment on September 1st. When Allstate had not received the September 18th payment by September 18th, it attempted to cancel her policy.
 DISCUSSION
Cancellation of a policy during a policy period due to nonpayment of premium requires specific notice sent by registered or certified mail, or by mail evidenced by a certificate of mailing at least ten days before the effective date of the cancellation. General Statutes § 38-175 (h) [now 38a-343]. Stenson v. Northland Insurance Company, 42 Conn. App. 177,181 (1996). Strict compliance by an insurer with the statutory mandates and policy provisions as to notice is essential to effect a cancellation through such notice. Travelers Ins. Co. v. Hendrickson, 1 Conn. App. 409,412 (1984).
The sole issue before the court at this time is whether Allstate in attempting to cancel the policy complied with the language of 38a-343 (a). That statute provides in pertinent part:
 ". . . Where cancellation is for nonpayment of any other premium [other than the first], at least ten days notice of cancellation accompanied by the reasons therefore shall be given."
The notice sent by Allstate on August 30, 1997 would be effective to cancel a Ms. Torres policy for failure to pay the August 18, 1997 premium. That cancellation would become effective on September 9, 1997,i.e. ten days after August 30, 1997.
If Allstate chose to extend the cancellation notice for failure to pay the August 18th payment until September 18th, the court sees no reason why they could not do so. They would simply be extending to their insured 18 or 19 day days of grace rather than the required ten, i.e. August 30th until September 18th.
However, the notice sent by Allstate contained an additional requirement. The notice not only required the payment of the August premium but also the payment of the September premium. Allstate notified Ms. Torres that if she did not make her September 18th premium payment her policy would be canceled that day.
While the parties have cited no authority, and the court can find CT Page 16417 none, it appears to the court that Allstate's attempt to send one cancellation notice conditioned upon two separate premium payments is inconsistent with the spirit and intent of Section 38a-343 (a). Clearly that statute is intended to give an insured fair notice that the insurer intends to cancel. The court also takes note that when liability insurance is canceled not only is the insured put at risk, but the public in general may well be put at risk. If the Allstate practice is permissible under the statute, there would be no reason that an insurer at the time of the first monthly delinquency could not notify an insured that any future delinquencies would result in automatic and immediate cancellation of the policy. Such a result would read out of the statute the protection which the legislature intended for both the insured and the public at large.
"Nonpayment of premium" is defined in Connecticut General Statutes § 38a-341 (3) as "failure of the named insured to discharge when due
any of his obligations in connection with the payment of the premiums on a policy, or installment of such premium. . . ." [emphasis added] When Allstate gave Ms. Torres notice on August 30th, her September 18th premium had not become due. Accordingly, she was not responsible for "non-payment of premium" as defined in Section 38a-341 (3) for September at the time that she was given the purported ten day warning of cancellation.
In Majernicek v. Hartford Casualty, Inc. Co., 240 Conn. 86, (1997) the Supreme Court stated:
"[I]n enacting Section 38a-343 (a) the legislature appears to have intended to eliminate the potentially harsh consequences to an insured of driving without knowing that his or her policy was inoperative. See 13 H.R. Proc., Pt. 10, 1969 Sess., p. 4437, remarks of Representative Gerald Stevens ("[i]f . . . someone has his insurance policy canceled and is driving under the mistaken impression that he has insurance and subsequently is involved in an accident, the consequences can be rather severe"); see also Johnston v. American Employers Ins. Co., 25 Conn. App. 95, 97-98, 592 A.2d 975 (1991) ("purpose of General Statute § 38a-343 . . . is to assure that before an automobile insurance policy is canceled the insured has a clear and unambiguous notice of the cancellation"). Thus, the requirement that an insurer provide an insured with notice of its decision to cancel an automobile insurance policy was a CT Page 16418 legislative effort that focused on affording an insured an adequate opportunity to procure the insurance."
Majernicek, 240 Conn. at 92.
The notice of cancellation by requiring two payments set forth terms which were material and were unilaterally imposed by Allstate. The court holds that Allstate did not have the option of advising Ms. Torres prospectively that it would cancel immediately upon her failure to make a future payment. The notice sent by Allstate to Ms. Torres was ineffective as a matter of law. Because the notice was ineffective, the policy remained in effect on the date of the accident.
For the reasons set forth herein summary judgment is entered in favor of Safeco Insurance company and against Allstate Insurance Company.
BY THE COURT
Kevin E. Booth, J. CT Page 16419