JOSEPH R. KREVIS *v.* CITY OF BRIDGEPORT
(AC 19949)

Schaller, Mihalakos and Hennessy, Js.

Argued January 9—officially released May 8, 2001

*George C. Springer, Jr.*, for the appellant (plaintiff).

*Frank A. May*, with whom, on the brief, was *James J. Rush, Jr.*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiff, Joseph Krevis, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) to deny benefits to him. The plaintiff claims on appeal that the board improperly affirmed the commissioner's decision (1) denying the plaintiff's motion for extension of time to file a motion to correct, (2) denying the plaintiff reimbursement for a certain prescription utilized to treat diabetes and (3) determining that the defendant, the city of Bridgeport, was not estopped from denying the plaintiff's total disability by virtue of a waiver of premiums concerning the plaintiff's life insurance policy. We affirm the decision of the board.

The following facts and procedural history are relevant to our disposition of this appeal. The plaintiff, a former police officer of the city of Bridgeport, ceased working for the defendant in 1987 because of a hypertension condition and retired in 1988. Upon retiring, he began receiving a disability pension with a monthly payment based on two thirds of his salary. Pursuant to a permanent partial disability award, he also received $219.03 in weekly compensation through May 21, 1991. The defendant sought to discontinue the payment of benefits, claiming that there was no evidence of an ongoing disability, and, on March 27, 1995, the commissioner ordered that the plaintiff's benefits cease.

The plaintiff later filed a claim for temporary total disability benefits from May 22, 1991, to the present or, in the alternative, benefits pursuant to General Statutes § 31-308a for the same period. The plaintiff also sought

reimbursement for the cost of his Micronase[1] prescription from June 15, 1994, through December 4, 1997. On July 2, 1998, the commissioner rejected the plaintiff's request for continued benefits and reimbursement for the Micronase prescriptions that had been filled. On August 18, 1999, the board affirmed the decision of the commissioner. The plaintiff appeals from that decision.

As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. "The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . A state agency is not entitled, however, to special deference when its determination of a question of law has not previously been subject to judicial scrutiny. . . . *Duni* v. *United Technologies Corp.*, 239 Conn. 19, 24–25, 682 A.2d 99 (1996); *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). Where . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 797–98, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

---

[1] Micronase is medication for the treatment of diabetes.

## I

The plaintiff first claims that the board improperly affirmed the commissioner's decision denying his motion for extension of time to file a motion to correct. We disagree.

The award was issued on July 2, 1998, and the plaintiff admits receiving notice of the award on July 9, 1998. He filed a motion for extension of time to file a motion to correct on July 10, 1998, which was denied on July 13, 1998. He had fourteen days from the award date to file a motion to correct. Thus, he had until July 16, 1998. See Regs., Conn. State Agencies § 31-301-4.[2] The commissioner may grant extensions of time for good cause shown.[3] See id. The commissioner has broad discretion in such decisions. *DeFonce Construction Corp.* v. *Leslie & Elliot Co.*, 21 Conn. App. 545, 548, 574 A.2d 1321 (1990); see *Mercado* v. *Personal Moving Services of America*, 14 Conn. Workers' Comp. Rev. Op. 364, 365 (1995).

In this case, there was no abuse of discretion. Even accepting the date on which the plaintiff admits receiving notice, he had sufficient time to file a motion to correct. No showing of good cause was made.[4] The

---

[2] Section 31-301-4 of the Regulations of Connecticut State Agencies provides in relevant part: "If the appellant desires to have the finding of the commissioner corrected he must, within two weeks after such finding has been filed, unless the time is extended for cause by the commissioner, file with the commissioner his motion for the correction of the finding and with it such portions of the evidence as he deems relevant and material to the corrections asked for . . . ."

[3] "[Our Supreme Court] has consistently interpreted 'for cause' as synonymous with nonfrivolous reasons or good cause." *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 23 n.7, 434 A.2d 293 (1980).

[4] The board, in reviewing the denial of the plaintiff's motion for an extension of time, concluded: "Here, the [plaintiff] contended that his counsel needed more time to peruse the transcript and exhibits before a motion to correct could be prepared. The trier of fact presumably disagreed. Based on the [plaintiff's thirty-seven] proposed findings, we deduce that the transcripts and the exhibits were available to him prior to the issuance of the trier's decision. . . . It is also apparent that counsel had reviewed these docu-

board properly determined that the commissioner did not abuse his discretion. In view of the procedural history of the case, the plaintiff failed to demonstrate any reason why he could not have filed a motion to correct within the time allowed. We conclude, therefore, that the board properly affirmed the decision denying the plaintiff's motion for an extension of time to file a motion to correct.

II

The plaintiff next claims that the board improperly affirmed the commissioner's decision denying him reimbursement for a prescription to treat his diabetes. We are not persuaded.

The commissioner concluded that the plaintiff's "diabetes medication is not found to be required due to [the plaintiff's General Statutes] § 7-433c[5] heart and

---

ments in preparing his proposal. The [plaintiff's] assertion that he needed more time to file his motion to correct was not bolstered by specific examples of items that could not be obtained or reviewed in the allotted filing period. He merely stated that he needed additional time to review the transcript and the exhibits, without getting into further detail.

"On appeal, it remains unclear exactly how the [plaintiff] was unfairly prejudiced by the trier's denial of his request for an extension. We are aware that the record in this case contains [twenty-eight] marked exhibits, and over 400 pages of transcribed testimony. Though large, this file is not so unusually enormous and complex that a thorough evaluation of the trier's findings could not reasonably be completed within the standard two week filing period. The trier certainly had the discretion to determine that the [plaintiff's] counsel was familiar enough with the file to prepare a motion to correct within the time limit prescribed by . . . § 31-301-4 [of the Regulations of Connecticut State Agencies]. Also, the [plaintiff] has not demonstrated any concrete prejudice from the denial of this motion, other than the ultimate absence of the motion to correct itself. We thus cannot say on appeal that the denial of the [plaintiff's] motion for extension of time was error. Accordingly, as the [plaintiff] did not file a motion to correct, we are limited to the trier's factual findings on review."

[5] General Statutes § 7-433c (a) provides in relevant part: "[I]n the event a uniformed member of a paid municipal fire department or a regular member of a paid municipal police department who successfully passed a physical examination on entry into such service, which examination failed to reveal any evidence of hypertension or heart disease, suffers either off duty or on duty any condition or impairment of health caused by hypertension or heart

hypertension claim, and, therefore, the [defendant] is not found responsible to pay for [or] reimburse the [plaintiff's] prescription for Micronase." In essence, this was both a factual finding and a conclusion.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [O]n review of the commissioner's findings, the [review board] does not retry the facts nor hear evidence. It considers no evidence other than that certified to it by the commissioner, and then for the limited purpose of determining whether or not the finding should be corrected, or whether there was any evidence to support in law the conclusions reached." (Internal quotation marks omitted.) *Mikula* v. *First National Supermarkets, Inc.*, 60 Conn. App. 592, 597, 760 A.2d 952 (2000). "The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792, 694 A.2d 1230 (1997).

"Proof that the injury arose out of the employment relates to the origin and cause of the accident. . . . [T]he essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative.

disease resulting in his death or his temporary or permanent, total or partial disability, he or his dependents, as the case may be, shall receive from his municipal employer compensation and medical care in the same amount and the same manner as that provided under chapter 568 if such death or disability was caused by a personal injury which arose out of and in the course of his employment and was suffered in the line of duty and within the scope of his employment, and from the municipal or state retirement system under which he is covered, he or his dependents, as the case may be, shall receive the same retirement or survivor benefits which would be paid under said system if such death or disability was caused by a personal injury which arose out of and in the course of his employment, and was suffered in the line of duty and within the scope of his employment. . . ."

The personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery. . . . As with the determination that an injury occurred in the course of employment, the question of whether an injury arose out of employment is one of fact." (Citations omitted; internal quotation marks omitted.) *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 272–73, 746 A.2d 743 (2000).

The plaintiff failed to establish a causal connection between his heart and hypertension claim and the diabetes for which the Micronase was prescribed. He failed to prove, therefore, the direct causal connection between his injury, the fact that he was diabetic and his employment, which would have entitled him to compensation for his diabetes prescription. It is not enough for the plaintiff to claim that if he is not provided with Micronase, his blood pressure will become elevated, thus exacerbating his hypertension. He must establish that his work on the police force caused the condition for which he seeks compensation. The evidence before the commissioner supports the commissioner's findings and conclusion that they were not related.[6] Additionally,

---

[6] The plaintiff argues that Philip Fazzone, a physician, in his medical report, stated: "Micronase, which is being prescribed for treatment of the [plaintiff's] diabetes, is related to treatment of his heart condition in that excellent control of his blood sugar is considered to be a factor in reducing the rate of progression of vascular disease." The board, having reviewed that finding, concluded: "The commissioner found, with little supporting discussion, that the [plaintiff's] diabetes medication was unrelated to his § 7-433c claim. As noted above, the [plaintiff] did not seek correction of this finding. Legally, the trier of fact was within his authority to disregard any medical testimony offered by the [plaintiff] in support of his position, even if apparently uncontradicted. . . . However, as the [defendant] points out, two doctors testified that the [plaintiff's] hypertension was unrelated to his diabetes, which implies that it was also unrelated to his need for the drug Micronase. . . . This directly supports the trier's conclusion . . . and precludes any possibility of our reversing the trier's decision on that matter." The board's conclusion accurately states the role of the commissioner in

the failure to file a motion to correct the findings makes it improper for the plaintiff to challenge them now. See Regs., Conn. State Agencies § 31-301-4; *Eligio* v. *DiLauro Bros.*, 15 Conn. Workers' Comp. Rev. Op. 253, 255 (1996). We conclude, therefore, that the board properly affirmed the decision denying reimbursement for the prescription.

### III

The plaintiff's final claim is that the board improperly affirmed the commissioner's decision that the waiver of premiums concerning his life insurance policy did not estop the defendant from asserting that the plaintiff was not totally disabled. We disagree.

"Under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. . . . It is fundamental that a person who claims an estoppel must show that he has exercised due diligence to know the truth, and that he not only did not know the true state of things but also lacked any reasonably available means of acquiring knowledge. . . . In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Internal quota-

---

credibility determinations. We are also mindful that "[t]he trier of the facts determines with finality the credibility of the witnesses and the weight to be accorded their testimony." *Gibson* v. *Keebler Co.*, 37 Conn. App. 392, 396, 655 A.2d 1172 (1995).

tion marks omitted.) *In re Michaela Lee R.*, 253 Conn. 570, 604, 756 A.2d 214 (2000).

The commissioner found that "the evidence that the [defendant] maintained a waiver of life insurance premiums for the [plaintiff] is not evidence that the [plaintiff] was totally disabled, as the standard for life insurance premium waiver is not the standard or controlling factor in determining whether or not [the plaintiff] is temporarily totally disabled . . . ."[7]

The board correctly determined that the plaintiff had failed to establish any connection between the life insurance policy and the compensation coverage. The disability waiver is irrelevant to the issue of disability for purposes of this claim, for even if we were to accept the notion that the defendant had acknowledged that the plaintiff satisfied the definition of disabled pursuant to the insurance policy, the definition under the insurance policy does not equate to the definition of disability under the Workers' Compensation Act (act), General Statutes § 31-275 et seq. Under the policy, "total disability" is defined as "your inability, due to sickness or accidental injury, to work at any job suited to your education, training or experience." In contrast, under the act, "[a] worker is entitled to total disability payments pursuant to [General Statutes] § 31-307 only when his injury results in a 'total incapacity to work,' which [our Supreme Court has] defined as 'the inability of the employee, because of his injuries, to work at his customary calling or at any other occupation which he might reasonably follow.' " *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 538, 651 A.2d 254 (1994). The definitions

[7] The board, having reviewed this finding, concluded: "[T]here is no evidence that the [plaintiff] somehow detrimentally relied on the [defendant's] contention to the life insurer that he was totally disabled, and there is no evidence that the [defendant] took an inconsistent position on a factual matter in which it had actual knowledge of the relevant facts. . . . We thus find no merit in the estoppel argument."

of total disability under the insurance policy and the act are not the same. The former definition speaks of an inability to work at a suitable job, while the latter definition speaks of a total incapacity to work at a job within reason.

Even if we were to accept the two definitions as equivalent, the plaintiff has not carried his burden of establishing the requisite elements of an estoppel claim. The plaintiff produced no evidence that the defendant had utilized the waiver of premiums to induce a belief in the plaintiff that he had a total disability, nor has the plaintiff produced evidence that he changed his position to his detriment as a result of the waiver. See *In re Michaela Lee R.*, supra, 253 Conn. 604. In short, the plaintiff failed to establish any of the essential elements of estoppel in this situation. Accordingly, we conclude that the board properly concluded that the waiver of premiums concerning the plaintiff's life insurance policy did not estop the defendant from asserting that the plaintiff was not totally disabled.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.