MICHAEL DIBELLO *v.* BARNES PAGE WIRE
PRODUCTS, INC., ET AL.
(AC 20612)

Lavery, C. J., and Dranginis and Flynn, Js.

Argued September 20—officially released December 18, 2001

*Leo Gold,* for the appellant (named defendant).

*Michael J. McAuliffe,* for the appellees (defendant Aetna Casualty & Surety Company et al.).

*Opinion*

LAVERY, C. J. The named defendant, Barnes Page Wire Products, Inc.,[1] appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) concluding that the defendant lacked insurance coverage at the time of the injury suffered by the plaintiff, Michael DiBello. The defendant claims on appeal that the board improperly affirmed the

[1] The named defendant contracted, or attempted to contract, for workers' compensation insurance coverage with three separate insurance companies during the time period implicated in this appeal. Each insurer also was named as a defendant in the proceedings before the workers' compensation commissioner and the workers' compensation review board on appeal. To avoid confusion, we will refer to the various insurers by name and to Barnes Page Wire Products, Inc., as the defendant. The defendant's first claim on appeal concerns Aetna Casualty & Surety Company (Aetna). The defendant's second and third claims concern ITT Hartford Group, Inc. (ITT Hartford). The board's decision regarding the third insurer, Ohio Casualty Group Insurance Company (Ohio Casualty), is not at issue in this appeal. The plaintiff, Michael DiBello, is not a party to this appeal.

commissioner's decision because (1) the defendant's insurer failed to comply with the cancellation notice requirements of General Statutes § 31-348, (2) the defendant's insurer waived the right to contest coverage when it filed a notice contesting liability pursuant to General Statutes § 31-294c and (3) the defendant's insurer waived the right to contest coverage when it sent the defendant a letter stating that it would represent the defendant at a hearing. We affirm the decision of the board.

The following facts and procedural history are relevant to the issues on appeal. On August 10, 1993, the plaintiff injured his back while working for the defendant. On September 29, 1993, he filed a claim for workers' compensation benefits. In a July 15, 1996 finding and award, the commissioner determined that the injury was compensable. The July 15, 1996 finding and award is not challenged on appeal.

The defendant, prior to the plaintiff's injury, contracted with Aetna Casualty & Surety Company (Aetna)[2] for workers' compensation insurance coverage for the period of February 26, 1992, to February 26, 1993. On December 3, 1992, the defendant received from Aetna a "Notice of Cancellation or Nonrenewal," stating that due to the defendant's adverse loss experience, Aetna was unwilling to continue to provide coverage. A box on the notice was checked alongside the statement, "We are cancelling this policy. Your insurance will cease on the Date of Cancellation shown above." The "date of cancellation" box to which that statement referred was blank. The "expiration date" box was, however, filled in with the date that the policy was due to expire, February 26, 1993. Upon receiving that notice, the defendant began to search for another workers' compensation insurance carrier.

---

[2] In April, 1996, Aetna Casualty & Surety Company was acquired by Travelers Insurance Company.

A principal of the defendant contacted an insurance agent and, by February 26, 1993, believed that he had secured a new policy with Ohio Casualty Group Insurance Company (Ohio Casualty). The defendant received a bill from the agent and remitted the required premium payment. It was later determined that the agent had misled the defendant regarding the policy with Ohio Casualty. Ohio Casualty in fact had declined to offer the defendant coverage, and the agent had retained the defendant's premium payment for his personal use. The agent later obtained insurance from ITT Hartford Group, Inc. (ITT Hartford), with coverage commencing August 14, 1993. When the plaintiff filed for benefits for his August 10, 1993 injury, the agent forwarded the claim to ITT Hartford.

After the plaintiff's injury was found to be compensable, a series of hearings was held before the commissioner to determine which of the three insurers, if any, afforded coverage to the defendant at the time of the plaintiff's injury. The commissioner concluded that, under the circumstances, none of the insurers provided coverage on August 10, 1993, and, therefore, the defendant was responsible for paying the benefits due to the plaintiff. The commissioner considered that the situation did not result from any fault on the part of the defendant and did not order it to pay any fines, penalties, interest or sanctions. The defendant appealed to the board, which affirmed the commissioner's decision as to Aetna and ITT Hartford, and remanded the matter for further proceedings regarding Ohio Casualty. Thereafter, the defendant brought this appeal.

"The standard applicable to the board when reviewing a commissioner's decision is well established. The board sits as an appellate tribunal reviewing the decision of the commissioner. . . . [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [T]he power

and duty of determining the facts rests on the commissioner . . . . The commissioner may base his or her findings on circumstantial evidence . . . . Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Internal quotation marks omitted.) *Chappell* v. *Manafort Bros., Inc.*, 63 Conn. App. 630, 633, 778 A.2d 225, cert. denied, 257 Conn. 911, 782 A.2d 133 (2001).

"This court's review of decisions of the board is similarly limited. . . . The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . [W]e must interpret [the commissioner's finding] with the goal of sustaining that conclusion in light of all of the other supporting evidence. . . . Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) Id.

I

The defendant first claims that the board improperly affirmed the decision of the commissioner because Aetna failed to comply with the cancellation notice requirements of § 31-348[3] and, therefore, Aetna's policy

---

[3] General Statutes § 31-348 provides in relevant part that "[e]very insurance company writing compensation insurance . . . shall report . . . to the chairman of the Workers' Compensation Commission . . . the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy. *The cancellation of any policy so written and reported shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman. . . .*" (Emphasis added.)

remained in effect on the date of the plaintiff's injury. We disagree.

"Whether an insurer gave notice of cancellation is . . . a question of fact . . . ." 2 G. Couch, Insurance (3d Ed. 1995) § 30:21, p. 30-28. The commissioner found that the December 3, 1992 notice sent by Aetna to the defendant was a notice of nonrenewal, rather than a notice of cancellation. Because that factual finding of the commissioner has support in the record,[4] we decline to disturb it.[5] The commissioner concluded that the

[4] Although there was a clerical error on the "Notice of Cancellation *or Nonrenewal*"; (emphasis added); that may have weighed in favor of a finding that the notice was one of cancellation, other information on the notice supported the commissioner's finding that it was one of nonrenewal. Furthermore, there was no indication that the defendant was misled by the notice in that it sought to secure coverage from another insurer to commence upon the expiration of the Aetna policy. Finally, the commissioner had before him a printout containing entries for the defendant from and testimony of a state insurance investigator regarding a National Council on Compensation Insurance, Inc. (NCCI), database, which is "the official notification unit for the state of Connecticut Workers' Compensation Commission." The "commission has contracted with NCCI to receive [General Statutes § 31-348] notices on behalf of the chairman"; *Thibodeau* v. *Rizzitelli*, 3373 CRB-4-96-7 (October 14, 1997); and, at least some of the time, such notices are transmitted via magnetic tape rather than by paper records. The NCCI database reflected that on January 23, 1992, NCCI received notification that Aetna had issued a policy to the defendant that was effective February 26, 1992, and expired on February 26, 1993, i.e., the date inscribed on the "Notice of Cancellation or Nonrenewal."

The commissioner, therefore, contrary to the assertion made by the dissent, had before him ample circumstantial evidence from which he permissibly could infer; see *Chappell* v. *Manafort Bros., Inc.*, supra, 63 Conn. App. 633; that the communication from Aetna to the defendant was a notice of nonrenewal. Although the commissioner in his finding and order did not detail explicitly each subordinate finding, we note that § 31-301-3 of the Regulations of Connecticut State Agencies, promulgated subsequent to the case law cited by the dissent, provides in relevant part that "[t]he finding of the commissioner should contain *only* the *ultimate* relevant and material facts essential to the case in hand and found by him, together with a statement of his conclusions and the claims of law made by the parties"; (emphasis added); and does not require that the commissioner's finding include, as well, all underlying facts.

[5] Perhaps in recognition of the high burden it must overcome to disturb the commissioner's factual finding on appeal; see *Chappell* v. *Manafort*

policy, by its own terms, expired on February 26, 1993, and, therefore, Aetna afforded no coverage to the defendant on August 10, 1993, when the plaintiff was injured.

On appeal to the board, the defendant argued that the notice of nonrenewal was ineffective because Aetna did not comply with the requirements of § 31-348 and, consequently, the policy remained in effect. Pursuant to that section, the cancellation of a workers' compensation insurance policy is not effective until fifteen days after the insurer notifies the workers' compensation commission of that cancellation. See footnote 3. The board disagreed, concluding that Aetna "was [not] attempting to cancel its policy within the meaning of § 31-348."

Our determination of whether the board correctly applied the law to the subordinate facts requires us to construe § 31-348 to discern whether the legislature intended the notice requirements of that provision to apply to an insurer's nonrenewal of a policy. Our research has uncovered no judicial opinion directly addressing the matter. "It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . [Nonetheless,] [w]here . . . [a workers' compensation] appeal involves an issue of statutory construction that has not yet been subjected to judicial scrutiny, this court has plenary power to review the administrative decision." (Citations omitted; internal quotation marks

*Bros., Inc.*, supra, 63 Conn. App. 633; the defendant chooses not to assume that burden and instead takes the approach of repeatedly misstating the finding in its appellate brief. The defendant, no less than eight times, states that the commissioner found that the December 3, 1992 notice from Aetna was one of cancellation and not one of nonrenewal. As evidenced by the commissioner's finding and order, and its denial of the pertinent portions of the defendant's motion to correct, the commissioner found precisely the opposite.

omitted.) *Krevis* v. *Bridgeport*, 63 Conn. App. 328, 330, 777 A.2d 196 (2001).

In determining whether the notice requirements of § 31-348 apply to Aetna's nonrenewal of the defendant's policy, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, [and] to the legislative history and circumstances surrounding its enactment . . . . Furthermore, statutory language should be given its plain and ordinary meaning. . . . We refrain from reading into statutes provisions that are not clearly stated and interpret statutory intent by referring to what the legislative text contains, not by what it might have contained." (Citations omitted; internal quotation marks omitted.) *State* v. *Stewart*, 64 Conn. App. 340, 348–49, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

The plain language of § 31-348 requires an insurer to provide notice to the workers' compensation commission upon the happening of two events: Either when insurance is effected or when it is canceled. The statute requires the insurer to provide certain information when a policy is effected, including its date of expiration. Section 31-348 does not explicitly state that an insurer must contact the commission again and confirm that the scheduled expiration has occurred. Furthermore, all of the case law interpreting § 31-348 or its predecessors has involved situations in which a party has terminated, or attempted to terminate, a policy *prior to* its expiration date. See, e.g., *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 730 A.2d 630 (1999); *Rossini* v. *Morganti*, 127 Conn. 706, 16 A.2d 285 (1940); *Piscitello* v. *Boscarello*, 113 Conn. 128, 154 A. 168 (1931); *Dengler* v. *Special Attention Health Services, Inc.*, 62 Conn. App. 440, 774 A.2d 992 (2001).

We have had occasion to distinguish between cancellation and nonrenewal in the context of General Statutes § 38a-343,[6] a provision imposing notice requirements on issuers of automobile insurance. In *Kane* v. *American Ins. Co.*, 52 Conn. App. 497, 503, 725 A.2d 1000 (1999), aff'd, 252 Conn. 113, 743 A.2d 612 (2000), we held that the statutory dictate that an insurer notify an insured of the cancellation of its policy at least forty-five days before that cancellation is effective was not applicable where a policy simply expired. Similarly, our Supreme Court concluded that the statutory notice provision was inapplicable where an insured's policy was terminated through the operation of a clause in the policy providing for automatic termination in the event that the insured purchased other, similar coverage. *Majernicek* v. *Hartford Casualty Ins. Co.*, 240 Conn. 86, 93–96, 688 A.2d 1330 (1997). Those cases instruct that where the date of or event triggering the termination of a policy is known from the inception of that policy, the provision of additional notice is superfluous and, hence, not required.

In *Piscitello* v. *Boscarello*, supra, 113 Conn. 130–31, our Supreme Court noted that "[t]he purpose of the statute requiring notice of insurance effected or cancelled to be filed with the board of compensation commissioners is to make an authentic record of the insurance policies in existence, so that any employee or prospective employee may ascertain whether the employer is insured and if so in what company." In this case, it was established that the purpose of the statute was achieved by the provision to the commissioners of the expiration date of Aetna's policy when that policy first was effected. Even though no cancellation notice

---

[6] General Statutes § 38a-343 (a) provides in relevant part that "[n]o notice of cancellation of policy . . . may be effective unless sent . . . to the named insured at least forty-five days before the effective date of cancellation . . . ."

was sent, the commissioner's records accurately reflected that the Aetna policy no longer was in effect on the date of the plaintiff's injury. There is no evidence that either the defendant or the plaintiff was deceived when Aetna did not verify with the commissioner that the scheduled expiration of its policy had occurred.

Because the plain language of § 31-348 does not require notice in the event of nonrenewal, because case law interpreting a similar statutory provision makes a distinction between cancellation and nonrenewal, and because the purpose of the statute was not thwarted by Aetna's failure to provide further information to the commission, we conclude that the notice requirement of § 31-348 is not applicable when a policy simply expires and, therefore, that the board correctly applied the law to the facts of this case.

II

The defendant next claims that the board improperly affirmed the decision of the commissioner because ITT Hartford waived the right to contest coverage when, pursuant to § 31-294c (b), it filed a notice contesting liability that did not identify lack of coverage as grounds for the contest. We disagree.

It is undisputed that ITT Hartford's policy became effective on August 14, 1993, four days after the plaintiff's injury. The plaintiff did not file a workers' compensation claim until September 29, 1993. On October 5, 1993, ITT Hartford, pursuant to § 31-294c (b),[7] filed a

---

[7] General Statutes § 31-294c (b) provides in relevant part that "[w]henever liability to pay compensation is contested by the employer, he shall file with the commissioner, on or before the twenty-eighth day after he has received a written notice of claim, a notice . . . stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the *specific grounds on which the right to compensation is contested. . . . [A]n employer who fails to contest liability for an alleged injury or death on or before the twenty-eighth day after receiving a written notice of claim and who fails to commence payment for the alleged injury or death on or before such twenty-eighth day, shall be*

notice, on the defendant's behalf, of its intention to contest liability (form 43) for the plaintiff's injury.

The completed form 43 did not include the fact that ITT Hartford's policy with the defendant was not yet in effect on the date of the plaintiff's injury. Instead, as the basis for contesting liability, it referred to appended documentation, specifically to statements from the plaintiff's coworker and the defendant's president, that raised questions regarding the authenticity of the claim. In June, 1994, ITT Hartford raised the issue of lack of coverage.[8] The defendant argued that § 31-294c (b) required that the claim be made on the form 43 and, because it was not, ITT Hartford had waived its right to assert the defense thereafter. The commissioner and the board disagreed, concluding that the statute did not apply and that ITT Hartford had not waived the right to contest coverage.

"Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. . . . Intention to relinquish must appear, but acts and conduct inconsistent with intention to [relinquish] . . . are sufficient. . . . Waiver is a question of fact for the trier." (Internal quotation marks omitted.) *Infante* v. *Mansfield Construction Co.*, 47 Conn. App. 530, 538, 706 A.2d 984 (1998). Although our review of the board's interpretation of § 31-294c (b) is plenary, we accord the board's construction great weight. *Krevis* v. *Bridgeport*, supra, 63 Conn. App. 330.

Section 31-294c (b) and the case law interpreting it impose strict requirements on an employer to timely and specifically inform an injured employee that it will

conclusively presumed to have accepted the compensability of the alleged injury or death." (Emphasis added.)

[8] The hearings regarding the compensability of the plaintiff's injury commenced about two months later. The hearings regarding insurance coverage commenced more than three years later.

be contesting liability for an injury for which the employee has claimed workers' compensation benefits. See footnote 7; *Russell* v. *Mystic Seaport Museum, Inc.*, 252 Conn. 596, 619–23, 748 A.2d 278 (2000) (employer precluded from contesting liability where notice lacked specificity); *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 304–305, 620 A.2d 176 (employer precluded from contesting liability where notice was untimely), cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993). The statute, however, does not mention insurers, their rights to contest coverage or the timing or waiver thereof. Furthermore, the defendant does not point us to, nor does our research disclose, any case in which § 31-294c (b) was held to require that an insurer provide notice to an insured employer.

Our Supreme Court, in discerning the legislative intent behind the notice requirement of General Statutes (Rev. to 1968) § 31-297 (b), now § 31-294c (b), explained that the statute is meant "to ensure (1) that employers would bear the burden of investigating a claim promptly and (2) that employees would be timely apprised of the specific reasons for the denial of their claim." *Menzies* v. *Fisher*, 165 Conn. 338, 343, 334 A.2d 452 (1973). The court noted that the portion of the statute providing for a conclusive presumption of liability in the event of the employer's failure to provide timely notice was intended "to correct some of the glaring inequities" of the workers' compensation system, specifically, to remedy the disadvantaged position of the injured employee pursuing a claim. Id., 342.

It is clear, therefore, that the purpose of § 31-294c (b) is to protect employees, not employers. There is no indication that this purpose was thwarted because ITT Hartford did not contest coverage on the form 43. That the plaintiff was not prejudiced is evidenced by the fact that the commissioner found his injury to be fully compensable.

Because § 31-294c (b) does not implicate an insurer's right to raise the defense of lack of coverage against an employer, we conclude that the board properly found it inapplicable. Furthermore, the purpose and operation of the statute support the board's conclusion that ITT Hartford, in filing the form 43, did not intend to relinquish its own rights, but rather to protect those of the defendant, to whom it was then providing coverage. The board, therefore, correctly refused to disturb the commissioner's finding that ITT Hartford had not waived the right to assert thereafter the defense that it was not the defendant's insurance carrier at the time of the plaintiff's injury.

### III

The defendant claims last that the board improperly affirmed the decision of the commissioner because ITT Hartford waived the right to contest coverage when it sent the defendant a letter stating that it would represent the defendant at a hearing. We decline to address that claim because it rests on material outside the record.

The following additional facts are relevant to our resolution of that issue. On April 13, 1998, ITT Hartford sent the defendant a letter, advising it that a hearing before the commissioner on the plaintiff's case had been scheduled for April 20, 1998, and that a representative of ITT Hartford would be "present at the hearing to represent ours and your interests in the matter." A copy of the notice of the hearing was attached to the letter. The April 20, 1998 hearing was the last of three hearings held before the commissioner on the matter of the defendant's insurance coverage, the results of which are the subject of this appeal.[9] The defendant did not receive the letter until after the close of the hearing, but attached the letter to its posthearing brief. The

[9] The other two hearings were held on August 12, 1997, and January 8, 1998.

commissioner's finding and order did not address the letter.

In its appeal before the board, the defendant attempted to introduce the letter as additional evidence pursuant to § 31-301-9 of the Regulations of Connecticut State Agencies.[10] The board considered that the unsigned letter appeared to be an automatically generated form and noted that, due to its timing, the letter could not have misled the defendant regarding insurance coverage by ITT Hartford. The board, therefore, declined to accept the letter as additional evidence.

The defendant does not attack the board's evidentiary ruling on appeal, but disregards it and makes a substantive argument on the basis of the contents of the letter. We decline to address that argument because "[i]t is a necessary application of appellate procedure that claims made in briefs must be supported by the record. *Furber* v. *Administrator*, 164 Conn. 446, 451, 324 A.2d 254 (1973)." (Internal quotation marks omitted.) *State* v. *Evans*, 9 Conn. App. 349, 353, 519 A.2d 73 (1986). "In deciding a case, this court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents and exhibits which are not part of the record." Id., 354.

Because the defendant's claim is predicated entirely on a document extraneous to the record, we cannot

[10] Section 31-301-9 of the Regulations of Connecticut State Agencies provides: "If any party to an appeal shall allege that additional evidence or testimony is material and that there were good reasons for failure to present it in the proceedings before the commissioner, he shall by written motion request an opportunity to present such evidence or testimony to the compensation review division, indicating in such motion the nature of such evidence or testimony, the basis of the claim of materiality, and the reasons why it was not presented in the proceedings before the commissioner. The compensation review division may act on such motion with or without a hearing, and if justice so requires may order a certified copy of the evidence for the use of the employer, the employee or both, and such certified copy shall be made a part of the record on such appeal."

consider it. Furthermore, because the defendant has not briefed the issue of whether the board's evidentiary ruling was proper, we decline to review that ruling. See *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 36 (1996).

The decision of the workers' compensation review board is affirmed.

In this opinion DRANGINIS, J., concurred.

FLYNN, J., dissenting. While I concur with the majority that the board's ruling as to the defendant ITT Hartford Group, Inc., should be affirmed, I respectfully dissent from the opinion of the majority as to the board's ruling concerning the defendant Aetna Casualty & Surety Company (Aetna), and would reverse the board's ruling as to it.

The judicial construction of provisions of our Workers' Compensation Act is guided by long established principles. "[T]he Workers' Compensation Act is remedial and must be interpreted liberally to achieve its humanitarian purposes." (Internal quotation marks omitted.) *Gil* v. *Courthouse One*, 239 Conn. 676, 682, 687 A.2d 146 (1997). Those general purposes are more specifically carried out by General Statutes § 31-348, the provision at issue in this appeal. Another long-standing principle has been that "workmen's compensation is a peculiar type of insurance, and . . . to every policy each employee of the insured is in a very real sense a party . . . ." *Rossini* v. *Morganti*, 127 Conn. 706, 708, 16 A.2d 285 (1940). Consequently, § 31-348 must be interpreted with the principle of protecting the employee in mind even though the dispute on appeal is between the insurer and employer.

I begin by setting forth the statutory scheme by which the provisions of § 31-348 requires compensation insurance companies to report their risks. "The purpose of the statute requiring notice of insurance effected or

cancelled to be filed with the board of compensation commissioners is to make an authentic record of the insurance policies in existence, so that any employee or prospective employee may ascertain whether the employer is insured and if so in what company." *Piscitello* v. *Boscarello,* 113 Conn. 128, 130–31, 154 A. 168 (1931). To accomplish that statutory purpose, § 31-348 first requires notice of when a policy goes into effect, to wit: "Every insurance company writing compensation insurance or its duly appointed agent shall report in writing or by other means to the chairman of the Workers' Compensation Commission, in accordance with rules prescribed by the chairman, the name of the person or corporation insured, including the state, the day on which the policy becomes effective and the date of its expiration, which report shall be made within fifteen days from the date of the policy." The insurer is then estopped from denying that the terms of the policy extend coverage until the reported expiration date. *Rossini* v. *Morganti,* supra, 127 Conn. 708. If such a notice had been filed in this case, the worker for whose benefit the statute exists could have consulted the chairman's records and determined the expiration date. However, the commissioner made no finding that this initial report had ever been filed as the law requires.[1] A second requirement of § 31-348 mandates how a "cancellation" is to be effected as to "any policy so written and reported." Section 31-348 provides in pertinent part that "[t]he cancellation of any policy so written and reported shall not become effective until fifteen days after notice of such cancellation has been filed with the chairman. Any insurance company violating any provision of this section shall be fined not less than one hundred nor

---

[1] General Statutes § 31-348 provides for a fine of up to $1000 per violation if an insurance company fails to report a date of expiration for a workers' compensation policy. Thus, failure to comply with § 31-348 is treated as an "offense" under the Penal Code of our General Statutes. See General Statutes § 53a-24.

more than one thousand dollars for each offense." Under the statutory scheme, no such notice is required before a nonrenewal notice indicating that the policy will not be renewed on its expiration date can become effective. This is so because the employee is able to ascertain from the required original report filed with the commissioner the date on which the policy expires. "As regards employees, the insurer is estopped to deny the truth of the formal record so made by it, whether or not the particular employee whose rights are in question examined the files where such records are kept." *Piscitello* v. *Boscarello*, supra, 131.

What was the formal record created by Aetna here? The commissioner made no finding that Aetna had filed a report of the policy's effective date with the chairman, as the law requires. The commissioner made no finding that Aetna had filed notice of the date of expiration, before which it would be estopped to deny coverage. Although the commissioner noted Aetna's argument and expert testimony that coverage ended on February 26, 1993, a commissioner's recital of evidence or arguments is no substitute for findings of fact. *Grabowski* v. *Miskell*, 97 Conn. 76, 78, 115 A. 691 (1921) (discussing our Supreme Court's "repeated injunction" against reciting evidence in lieu of fact-finding); *Orsinie* v. *Torrance*, 96 Conn. 352, 354, 113 A. 924 (1921); *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 262, 108 A. 799 (1919) ("[w]e cannot find the facts from [recited] testimony and hence we cannot use it in any degree"). We are left to wonder whether Aetna created the required formal record and, if so, what that record was. The commissioner simply concluded that a document sent by Aetna to the insured was a "notice of nonrenewal" without finding the subordinate facts that legally and logically would justify that conclusion. "[T]he commissioner ought to decide explicitly every material issue of fact on

which his conclusions are based." *Orsinie* v. *Torrance*, supra, 354.

I turn to the commissioner's finding that a nonrenewal notice, and not a cancellation notice, had been sent by Aetna to the insured. This simply is clearly erroneous. The undisputed record before the commissioner included the following: Aetna created and sent a document to the insured that stated that it was a cancellation of Aetna's policy with the insured. The document contained a marked check box that stated: "We are cancelling this policy. Your insurance will cease on the date of cancellation shown above." The document also contained a separate check box for indicating that the document is a nonrenewal, but that box was left blank. The form did, as the majority holds, include the phrase "notice of cancellation or nonrenewal." However, at the top, in bold print, before setting out the check boxes designating the kind of notice being given, the document reads: "The following is applicable only if marked." Thus, since "nonrenewal" was not checked, the form unequivocally stated to the insured that it was a *cancellation* notice. Having chosen to issue a cancellation rather than a nonrenewal, Aetna was required to comply with statutory requirements for notice before its cancellation could become effective. Although the majority states that this cancellation was a "clerical error," the commissioner made no such finding, and it is not within our competency on appeal to find facts. Aetna offered no testimony of an employee indicating that he or she had made such an error. The majority points to a blank space on the form where the cancellation date could have been entered, presumably as a source of ambiguity, which they then choose to resolve in favor of the insurance company. Although I disagree that this is any source of ambiguity, this resolution of purported ambiguity in the notice runs against the rules established in our case law. "Any

uncertainty as to the meaning of a notice from an insurer to its insured must be resolved against the insurer and in favor of the insured." *Travelers Ins. Co.* v. *Hendrickson,* 1 Conn. App. 409, 412, 472 A.2d 356 (1984).

One subordinate factual finding, among several, that the commissioner should have made before concluding that an insurance company has not violated the cancellation provisions of § 31-348 is the finding that the initial notice provisions had been followed. The qualifying phrase, "any policy *so written and reported,*" in the provision describing proper cancellation can indicate nothing less by plain meaning. A restrictive reading of that phrase to mean that only policies properly recorded are subject to the cancellation notice safeguards would yield a result never intended in the statute. Suffice it to say that the purpose of § 31-348 is not to reward noncomplying insurers with the ability to blindside employees by canceling without the usual record notice. As stressed earlier, our Workers' Compensation Act is to be construed liberally to achieve its humanitarian purpose of *protecting* the employee. A reading of the phrase to mean that compliance with the formal record notice requirements is immaterial to cancellation would render the phrase surplusage and also create a perverse incentive not to record the terms of the policy. Under § 31-348, the commissioner is required to make the factual finding that the insurer has honored all of the formal record requirements before determining whether a cancellation has been effected properly. The commissioner did not. Thus, his determination that Aetna was not liable is a conclusion "illegally or unreasonably drawn" from insufficient subordinate facts. Cf. *Adzima* v. *UAC/Norden Division,* 177 Conn. 107, 117–18, 411 A.2d 924 (1979).

The term "cancellation" is normally used in the insurance business to signify the termination of "a policy prior to its expiration . . . ." 2 G. Couch, Insurance

(3d Ed. 1995) § 30:1, p. 30-2. In contrast, the term "nonrenewal" generally is applied when an insurer elects not to continue the policy at the expiration of its ordinary term. See id., § 29:1 et seq.

The sole indicia of the date of expiration in the record was expert testimonial evidence from a state investigator that he had checked computer records of the National Council on Compensation Insurance, Inc. (NCCI), and had found that an Aetna policy had expired on February 26, 1993.[2] The commissioner must not rely on testimony as to a report from an NCCI database, rather than a formal record of an insurer's direct report in the commission chairman's files. The ease with which he could assess this secure record and the relative unreliability of witness testimony about an NCCI database renders such reliance unjustifiable.[3] The date on record

[2] Despite the requirements of General Statutes § 4-167, requiring the adoption of regulations with respect to an agency's organization, operation, methods and procedures, I find no such regulation in which the chairman of the workers' compensation commission designates NCCI to be his recipient for notices or reports that he is obligated to accept under the provisions of General Statutes § 31-348.

[3] General Statutes § 31-348 provides in relevant part that "[e]very insurance company writing compensation insurance . . . shall report . . . to the chairman of the Workers' Compensation Commission . . . the day on which the policy becomes effective and the date of its expiration . . . ." It does not provide for reports by the insurer to a third party.

The majority opines that the commissioner had ample circumstantial evidence from which he could infer that the notice given by the insurer was a notice of nonrenewal despite the fact that the form used stated that it was a cancellation and that it was not a nonrenewal. It supports this view on the basis that the record indicates that the NCCI receives notices on behalf of the chairman under contract with the commission. However, the statute requires, not that an insurer like Aetna notify a database operator in some different state, but instead that Aetna file a report with the chairman of the commission. There simply is no evidence that it did so and nothing from which this could be inferred. Our Supreme Court has recognized the need for strict compliance with this statute to protect the worker. *Piscitello* v. *Boscarello*, supra, 113 Conn. 130–31.

The case of *Thibodeau* v. *Rizzitelli*, 3373 CRB-4-96-7 (October 14, 1997), provides a good example of why the direct reporting requirement of the insurer to the chairman of the commission, for which the General Assembly

itself, as unreliably indicated by the testimony of an NCCI report, is insufficient as a matter of law to determine the date of expiration of the policy if it is to be used against the insured. The purpose of the central notice filing provisions in § 31-348 is to protect the insured employee against, and to *estop the insurer* from making, a denial of coverage if the dates on record indicate coverage. In sum, the commissioner's conclusion was illegally and unreasonably drawn from insufficient subordinate factual findings. As noted by the majority, "the conclusions drawn" by the commissioner will not stand if "they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Adzima* v. *UAC/Norden Division*, supra, 177 Conn. 117–18.

I respectfully dissent from the opinion of the majority.

wisely provided, should be upheld by courts of law. In *Thibodeau*, the insurer generated a report to NCCI on *August 8, 1994*, on magnetic tape to reinstate a policy with an effective date of May 15, 1994, almost three months in the past. The next day, on August, 9, 1994, the insurer generated a report canceling the same policy, with an effective date of cancellation identical to the date of reinstatement, May 15, 1994. This was all done purposely "so that the agent's commission could be adjusted" by manipulating the corporation's computers. This demonstrates the confusion and litigation that can result from reliance on such a database to determine what policy is in effect on a particular date.