## CHRISTINE DEMCHAK ET AL. *v.* STATE OF CONNECTICUT ET AL.*

Superior Court, Judicial District of Fairfield
File No. CV-01 0387861 S

Memorandum filed July 15, 2003

* Affirmed. *Demchak* v. *State*, 83 Conn. App. 86, 847 A.2d 1095 (2004).

*James G. Williams*, for the plaintiffs.

*Robert P. Murphy*, for the defendant Safeco Insurance Company of America.

SHEEDY, J. This action arises out of a motor vehicle accident on January 22, 2001, at or about 2:47 p.m. in Monroe, when a school bus driven by the defendant John McFadden collided with a car driven by the plaintiff Christine Demchak.[1] She had been insured under an automobile policy issued by the defendant Safeco Insurance Company of America (Safeco). That policy provided underinsured motorists coverage limits of $500,000 per person. The seventh count of the revised complaint asserts a claim for such benefits. Safeco has filed a motion for summary judgment, stating that there is no genuine issue of material fact as to whether its policy provided underinsured motorists benefits to the plaintiff on the date and at the time of the accident. It argues in the alternative that the policy was canceled and that the notice of cancellation complied with General Statutes § 38a-343 or that coverage terminated for the reason that the plaintiff had failed to renew the policy. The plaintiff has objected and argues variously that the notice was ineffective because it was not received and did not conform to the language required by the statute, and that Safeco's conduct subsequent to the loss constituted a waiver of its right to rely on

---

[1] Although the plaintiff's husband, Mark Demchak, also brought a loss of consortium claim, Christine Demchak will be referred to in this opinion as the plaintiff. Multiple other defendants were sued under various theories of liability. Safeco Insurance Company of America, which filed the motion for summary judgment at issue, will be referred to in this opinion as the defendant.

the notice.[2] The parties have filed no fewer than seven memoranda of law with supporting documents. Oral argument was heard on May 5, 2003.

The following facts are not in dispute: (1) The policy in question—policy number K1379424—was a six month policy that was due to expire on January 12, 2001. (2) By letter dated December 10, 2000, the plaintiff was told that it was now "time to renew your Automobile policy" and that the "renewal premium" was $412.60. The letter also referenced an outstanding balance of $60.52. The policy period for the "renewal" policy was to be January 12 to July 12, 2001. (3) Thereafter, a monthly payment plan cancellation warning notice was sent by the defendant. A certified United States postal certificate of mailing establishes a "run" date of January 7, 2001, and a "mail" date of January 8, 2001. The mailing address for the plaintiff was as provided in the policy declaration and on the summons for the commencement of the lawsuit.[3] The notice

_____

[2] The waiver argument is not considered because it was not briefed properly. The plaintiff's original objection of August 23, 2002, asserts only that Safeco waived its right without providing any facts to support that claim. Where there is an unsupported assertion that is not briefed beyond the mention of that issue, the issue is itself deemed to have been waived and does not create an issue of fact for the purpose of defeating a summary judgment motion. See *Commission on Human Rights & Opportunities* v. *Truelove & Maclean, Inc.*, 238 Conn. 337, 344 n.11, 680 A.2d 1261 (1996). In a later document, the plaintiff provided medical bills that were provided to Safeco, which documents are hearsay and do not appropriately support her objection.

[3] Although the plaintiff does not dispute the existence of the certificates of mailing, she questions their validity because the post office notes receipt of 1657 notices while only page twenty of the run list is provided. The simple answer is that only that page lists the plaintiff as an addressee, and all other pages are irrelevant to the motion for summary judgment. With regard to the claimed lack of an affidavit to support that documentation, paragraphs ten through fourteen of the affidavit of Safeco employee Christine Gingras, dated September 13, 2002, reference the same and thus support the mailing. At least one Superior Court judge has found such a certificate of mailing is sufficient proof of the sending of a cancellation notice to support summary judgment in favor of the defendant insurer. See *John* v. *Government Employ-*

stated that the payment of $70.77 due January 1, 2001, was outstanding as of January 7, 2001. It provided that coverage would be continued without interruption if that payment were "postmarked and mailed no later than January 21, 2001," and that the policy would "cancel on January 22, 2001," at 12:01 a.m. if the payment was not postmarked and mailed by January 21, 2001. It also provided: "This is the last notice you will receive." (4) A check signed by one Ute Lima, referencing the policy in question, and dated January 22, 2001, was mailed to a Safeco agent. Although proof of the postmark was not provided, the date of the check establishes that it could not have been "postmarked and mailed by January 21, 2001." The plaintiff also does not claim that the payment required to avoid termination of coverage on January 22, 2001, at 12:01 a.m. was ever timely mailed. (5) The policy in question was reinstated effective January 23, 2001. The January 30, 2001 notice of reinstatement provided: "Please be advised there was a lapse in your coverage before this reinstatement became effective."

The issue for this court, therefore, is whether coverage terminated for nonpayment of the monthly premium or because the policy was not renewed by the plaintiff and what warning notice, if any, was required to be given by Safeco.

Summary judgment shall be rendered if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Practice Book § 17-49. In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 745, 660 A.2d 810 (1995). The party seeking summary

ees *Ins. Co.*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 438797 (September 20, 1991).

judgment has the burden of showing the absence of any genuine issue of material fact, which, under applicable principles of substantive law, entitles it to judgment as a matter of law. *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). It is not enough for the opposing party merely to assert the existence of the dispute. Mere assertions of fact are insufficient to establish the existence of a material fact and cannot therefore rebut properly presented evidence in support of the motion. *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554–55, 707 A.2d 15 (1998). A material fact is a fact that will make a difference in the result of the case. *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001). The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. *Pion* v. *Southern New England Telephone Co.*, 44 Conn. App. 657, 663, 691 A.2d 1107 (1997). It is not the court's function in deciding a summary judgment motion to determine fact issues, but only to determine whether there are issues of fact. *Nolan* v. *Borkowski*, 206 Conn. 495, 500, 538 A.2d 1031 (1988). The summary judgment procedure is designed to eliminate the delay and expense associated with the litigation of an issue where there is no real issue to be tried. *Wilson* v. *New Haven*, 213 Conn. 277, 279, 567 A.2d 829 (1989).

General Statutes § 38a-343 provides the requirements regarding mailing and timing of cancellation notices. Under § 38a-343 (a) (2), when cancellation is for nonpayment of a premium other than the first premium on a new policy, "at least ten days' notice of cancellation accompanied by the reason for cancellation shall be given. . . ." The statute also provides in relevant part

that "mail evidenced by a certificate of mailing" is effective to show notice of cancellation. General Statutes § 38a-343 (a). Even if the court were to conclude that the policy terminated for nonpayment of a monthly premium, as the plaintiff argues, there is compliance with § 38a-343 (a) (2). The cancellation warning with a "run" date of January 7, 2001, and a "mail" date of January 8, 2001, evidenced by a certificate of mailing, clearly predated the specified date of cancellation (January 22, 2001) by more than the required ten days. The plaintiff's argument that fifteen days notice of cancellation is required (and that the notice mailed January 8, 2001, is therefore ineffective to cancel the policy on January 22, 2001) because the premium due was the first premium on a "new" policy is not persuasive. The argument presumes that there was, on the date of the accident, a policy in effect for the period January 12 to July 12, 2001, when in fact there was not because the plaintiff never responded to the December 10, 2000 letter from Safeco, which this court will address.

The argument that the notice was ineffective because it failed to comply with all of the requirements of § 38a-343 (b) also is not persuasive. Specifically, the plaintiff argues that the warning did not advise the insured of the need to respond to inquiries from the commissioner of motor vehicles with regard to whether insurance on the vehicle was currently being maintained or that, in the event that the policy lapsed, the registration for the vehicle would be canceled and the license plates would be canceled, and that she would then be subject to legal penalties. She also claims that references to specified statutes were omitted. The warnings provided clearly advised the plaintiff of her substantive rights—specifically, that which would occur in the event of cancellation of the policy and the potential consequences thereof.

The plaintiff argues that coverage was in effect on the date of the accident because what had occurred was cancellation for nonpayment of a premium, and § 38a-343 (a) requires that notice be "given." The plaintiff executed an affidavit stating that she never received the notice. Our Supreme Court, in *Westmoreland* v. *General Accident Fire & Life Assurance Corp.*, 144 Conn. 265, 271, 129 A.2d 623 (1957), determined that the notification requirements for the cancellation of an existing policy should be controlled by the policy because the policy is a contract between the parties. "It is always competent for parties to contract as to how notice shall be given, unless their contract is in conflict with law or public policy." Id., 270.

In this case, the policy in question also provided that Safeco could cancel by "mailing by registered or certified mail or *United States Post Office certificate of mailing* to the named insured shown in the Declarations at the address shown in this policy" with "at least 10 days notice . . . if cancellation is for nonpayment of premium . . . ." (Emphasis added.) That was done. The decisions of our Superior Court have held that actual receipt is not required by § 38a-343. See *Schneider* v. *Brown*, Superior Court, judicial district of Fairfield, Docket No. 340692 (April 23, 2003) (34 Conn. L. Rptr. 403); *Iuteri* v. *Allstate Ins. Co.*, Superior Court, judicial district of New Haven, Docket No. 357659 (July 8, 1999) (25 Conn. L. Rptr. 67); *Buccino* v. *Middlesex Mutual Assurance Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 123133 (April 22, 1993) (9 Conn. L. Rptr. 13).

The evidence that the subject coverage terminated for nonrenewal is persuasive. The December 10, 2000 letter from Safeco specifically informs the plaintiff (1) that it is time to renew the policy, (2) that the new policy period would begin on January 12, 2001, and (3) that "the renewal premium" was $412.60. The terms

provided therein and in the enclosed declaration were sufficiently definite to constitute an offer to contract. A policy of insurance is a contract between the parties, and a renewal of the original policy is a separate and distinct contract providing coverage for a specified term or period. See *Stenson* v. *Northland Ins. Co.*, 42 Conn. App. 177, 185, 678 A.2d 1000 (1996). The fact that such letter also states that the outstanding balance of $60.52 must be postmarked by December 20, 2000, to prevent cancellation is not inconsistent with a finding that termination occurred for failure of the plaintiff to renew. That is so because her payment of the outstanding amount by December 20, 2002, would have ensured continued coverage for only the six month policy then in effect; it would not have renewed that policy for another six months, nor is there anything in that letter to suggest the same. Had she remitted the outstanding payment by December 20, 2000, she still would have had to accept the defendant's offer of renewal to continue coverage for the new period beginning January 12 to July 12, 2001. The plaintiff never responded to the letter of December 10, 2000. She paid no additional premium of any kind before the accident in question. She did not accept the offer of renewal, and there was no contract in effect on the date of the subject loss.

Safeco's policy included an automatic termination provision that read in pertinent part: "If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. *Failure to pay the required renewal premium when due shall mean that you have not accepted our offer. . . .*" (Emphasis added.) The plaintiff's failure to pay the renewal premium was, under the terms of the policy, a failure to accept the defendant's offer, thus invoking the automatic termination provision.

The Appellate Court has concluded that statutory notification requirements do not apply to the nonrenewal of a policy. In *Kane* v. *American Ins. Co.*, 52 Conn. App. 497, 725 A.2d 1000, aff'd, 252 Conn. 113, 743 A.2d 612 (2000), the policy, as here, provided an automatic termination provision in what was, as here, a series of six month policies. An offer to renew was sent to the insured, who failed to send the required premium. The question reserved for the court in relevant part was: "Did [General Statutes] §§ 38a-340 and 38a-341 (2) require the defendant . . . to issue a cancellation notice in accordance with the provisions of § 38a-343 before terminating the plaintiff's . . . automobile insurance coverage?" (Internal quotation marks omitted.) *Kane* v. *American Ins. Co.*, supra, 500. To that question, the court's response was, "No." Id., 503.

The court distinguished *Travelers Ins. Co.* v. *Hendrickson*, 1 Conn. App. 409, 472 A.2d 356 (1984), the case on which this plaintiff relies, because in *Travelers Ins. Co.*, the insurer had sent a premium notice that indicated partial payment would be applied as a credit to the total premium due, the insured had sent partial payment and the insurer had credited it toward the total premium due. The court in *Kane* determined that the notice in *Travelers Ins. Co.* was of particular significance because it reasonably could have led the insured to believe that the policy was in effect on the pertinent date. Superior Court decisions have held that an insurance policy terminates when an insured fails to renew, and the only notification required is the thirty day notice here provided by the offer to renew. See *Babis* v. *Guardier*, Superior Court, judicial district of Fairfield, Docket No. 277440 (December 6, 1993), which held that the applicable notice requirements in nonrenewal cases were as provided in General Statutes § 38a-323 (b); see also *Progressive Northwestern Ins. Co.* v. *Torres*, Superior Court, judicial district of New Britain, Docket No.

495085 (October 5, 1999), in which the court held that because an offer to renew was sent within the statutory thirty day period and the defendant failed to accept the offer with a renewal premium payment, the policy automatically terminated pursuant to the terms of the policy.

Notice of the insurer's intent not to renew is required under § 38a-323 (b) (1) to be not less than thirty days in advance of the policy's renewal or anniversary date. The nonrenewal sixty day notice requirement of § 38a-323 (a) is not applicable in the case before the court because Safeco did not want to cancel the policy through nonrenewal; it made an offer of renewal that was rejected because it was not accepted. As Safeco aptly observes, the logical extension of the plaintiff's argument would require an insurer that wanted to cancel for the insured's failure to pay the first premium on a renewal policy to provide not only sixty days notice, but to continue coverage for those sixty days in those instances in which an insured allowed his or her policy to lapse at the end of its natural term. Under such circumstances, the insurer would be required to provide eight months of coverage to an insured under a six month policy without payment of the necessary premium. Where, as here, the date of or event triggering the termination of a policy is known from the inception of the policy, "the provision of additional notice is superfluous and, hence, not required." *DiBello* v. *Barnes Page Wire Products, Inc.*, 67 Conn. App. 361, 369, 786 A.2d 1234 (2001), cert. granted on other grounds, 260 Conn. 915, 796 A.2d 560 (2002) (appeal withdrawn June 26, 2002).

Although stated in the context of a bulletin directed to excess lines insurers, the insurance commissioner has stated: "The obligation of surplus lines insurers to give insureds sixty days advance notice of intent not to renew does not apply in the case of non-payment of

premium or if the insured fails to pay any advance premium required by the insured for renewal." Connecticut Excess Lines Bulletin No. EL-5 (July 1, 1987).

The proof of notice requirement of § 38a-343 and the sixty day notice requirement of this policy applicable when the insurer determines not to renew are inapplicable in the present case. The thirty day notice requirement regarding renewal notices satisfies § 38a-323 (b) (1) in view of the December 10, 2000 offer of renewal and the termination of coverage on January 22, 2001.

No genuine issue of material fact exists regarding whether coverage under this policy existed at the time of the accident at issue, the policy having terminated because it was not renewed despite appropriate notice. The motion for summary judgment is granted.