Pedro A. ANDRADE–SORTO,
Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

No. 07–CV–899.

District of Columbia Court of Appeals.

Argued Sept. 30, 2009.
Decided Oct. 8, 2009.

Alexander Francuzenko, Reston, VA, for appellant.

Thomas P. Ryan, Baltimore, MD, with whom Amy Leete Leone, Rockville, MD, was on the brief, for appellee.

Before FISHER and OBERLY, Associate Judges, and BELSON, Senior Judge.

OBERLY, Associate Judge:

This is a simple case of offer and acceptance—but one with no acceptance and therefore no contract. We affirm the trial judge's ruling that the insured's failure to pay the premium owed to renew his auto insurance policy prior to his death means that there was no policy in force, and hence no coverage for injuries sustained by appellant Pedro Andrade–Sorto, a pas-

senger in the insured's car at the time of the accident that caused the insured's death.

The facts are straightforward and not in dispute. Jose E. Martinez had an automobile insurance policy with appellee Allstate Insurance Company that expired at 12:01 a.m. on November 10, 2000. On November 11, 2000, appellant was a passenger in Martinez's car when Martinez drove the car into an intersection and the vehicle was hit by a Metrobus. Martinez was killed in the accident, and appellant suffered serious injuries. Appellant sued Allstate, thinking it was Martinez's auto insurance carrier, but Allstate denied coverage because Martinez's policy had expired the day before the accident. Although Allstate had offered to renew Martinez's policy, Martinez never paid the renewal premium before he was killed, and Allstate therefore took the position that there was no policy in effect.

Following a bench trial, the trial court agreed with Allstate. It considered and rejected appellant's argument that the policy should be "deemed" to have been in effect because Martinez allegedly would have paid the premium during the seven-day grace period typically allowed by Allstate had he lived and, had he done so, coverage would have been retroactive to November 10th and in force on November 11th, the day of the accident. The court also rejected appellant's argument based on his assertion that public policy in the District of Columbia favors the provision of insurance coverage for innocent victims of auto accidents.

■ The trial court's decision included Findings of Fact and Conclusions of Law. We review the findings of fact which, as noted, are not in dispute, under the clearly erroneous standard, and our review of the court's legal conclusion that there was no policy in force is de novo. See, e.g., Crescent Props. v. Inabinet, 897 A.2d 782,

790 (D.C.2006) ("a trial court's findings of fact will not be disturbed unless they are clearly erroneous") (internal quotation marks omitted); Lawlor v. District of Columbia, 758 A.2d 964, 974 (D.C.2000) ("We review the judge's legal conclusions de novo. ...").

■ The evidence supports the trial court's ruling in favor of Allstate. This was not a case of cancellation or refusal to renew a policy, requiring statutory notice to the insured under D.C.Code § 31–2409 (2001). On the contrary, Martinez's policy expired at 12:01 a.m. on November 10, 2000, but Allstate had sent him an offer to renew on October 10, 2000, a month before the slated expiration of his prior policy. The renewal offer expressly stated: "This is an offer of coverage only. Insurance described on this document will not go into effect unless we receive your premium payment before the effective date shown on this [sic] Policy Declarations." In case that statement were not clear enough, the very next paragraph of the renewal offer stated: "This is a renewal offer only. Insurance described in this document will go into effect only if your premium payment is received by us when due. A bill will be mailed to you separately." Then, on October 22, 2000, Allstate mailed a bill to Martinez for the renewal offer premium. The bill stated, in capital letters and in two separate places, that "YOUR COVERAGE WON'T CONTINUE UNLESS WE RECEIVE THE MINIMUM AMOUNT DUE BEFORE 12:01 A.M. STANDARD TIME ON November 10, 2000." Nonetheless, no payment was ever received by Allstate.

Nor is appellant's case made more palatable by the fact that Allstate customarily allowed its insureds a seven-day grace period in which to pay their premiums. First, an Allstate representative testified at trial that Allstate did not tell its customers of that policy because it did not want

them to pay their premiums habitually late, and there is no evidence in the record that Martinez knew of the grace period so there is no reason to believe he was relying on it. (And certainly appellant, who was not the insured and had no contractual relationship with Allstate, cannot be said to have relied on the grace period.) Second, the grace period was available only to those who actually availed themselves of its benefits by making payment within the seven days. Martinez of course did not do so. As the trial judge recognized, that he was prevented from doing so by death does not allow us to speculate that, had he lived, he would have paid within the grace period. Martinez's death also makes irrelevant the fact that he had a history of making late payments under his prior policies with Allstate. Late payments are not the same as no payments, and here the insurmountable obstacle facing appellant is that there was no payment.

■ The sole legal authority cited by appellant in support of his contrary position is 6 MARK S. RHODES, COUCH ON INSURANCE § 32:134 (2d ed. 1985), which provided in pertinent part that "if death or loss occurs during an extension or grace period, it is no bar to recovery that the premium has never been paid." Even assuming that this provision were relevant, a question we deem far from clear given that Martinez's death did not occur during "an

extension or grace period" for late payment under an existing policy but, rather, occurred after his policy with Allstate had expired and he had failed to take the steps necessary to renew, it would not help appellant because Couch's treatise has been revised to provide that "where death or loss occurs during the extension or grace period, it is no bar to recovery that the premiums have not been paid, *provided that they are paid prior to the expiration of the extension or grace period, at least where such was the intent of the parties."* 5 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 76:58 (3d ed. 2005) (emphasis added).[1] Here, we conclude, as did the trial court, that Martinez's failure to pay the premium, either by the due date or within the seven-day grace period that Allstate allowed as a matter of discretion, means that there was no contract of insurance in effect between Allstate and Martinez at the time of the accident on November 11, 2000.

■ Although there is no case law from our jurisdiction on this point, the cases from other jurisdictions overwhelmingly support the rule advocated by Allstate and accepted by the trial judge, and appellant cites no contrary cases.[2] This rule makes sense as a matter of basic contract law. Allstate offered to renew Martinez's policy, but he never accepted that offer. That he did not do so because he died is of no

---

1. The Table of Parallel References in the Third Edition of COUCH ON INSURANCE shows that the section from COUCH ON INSURANCE (2d) cited by appellant has been renumbered and now appears in Section 76:58 of COUCH ON INSURANCE (3d). *See* 5 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE p. xxxvi (3d ed. 2005). The Third Edition does not explain why the critical extra language was added, but we think it a fair surmise that it was to bring the treatise into line with the case law which, as we discuss below, overwhelmingly holds that non-payment of a renewal premium either by the due date or within a customary grace period means that there is no policy in force.

2. *See, e.g., Legg v. Fortis Ins. Co.,* 978 So.2d 776, 778 (Ala.Civ.App.2007) ("a provision for a grace period does not change the date when the premium is due; thus, a grace provision does not contemplate free insurance, but is merely an extension of an opportunity to pay, and ultimate payment for the period is expected") (internal quotation marks omitted); *Lynch v. Mississippi Farm Bureau Cas. Ins. Co.,* 880 So.2d 1065, 1069 (Miss.Ct.App.2004) ("An insurance company may require that a premium actually be received by a certain date in order for the policy to be renewed."); *Demchak v. State,* 48 Conn.Supp. 460, 849 A.2d 1, 6 (2003) (granting summary judgment

moment. There are any number of reasons he might not have paid had he lived—lack of funds or forgetfulness, to name just two—but the result would have been the same regardless of the reason for nonpayment. Allstate was not required to provide coverage to a former insured who was offered a renewal policy but did not comply with the terms necessary to create a binding contract of insurance.

Finally, we agree with the trial judge that there is no public policy in the District of Columbia requiring Allstate to provide coverage to an insured who has failed through nonpayment to renew his policy. At best, the public policy arguments in this case cancel each other out, when one balances Martinez's argument in favor of coverage for innocent victims who are injured in auto accidents against Allstate's argument that public policy does not require insurance companies to provide coverage even after an offer to insure has been made but not accepted.

Accordingly, the judgment of the trial court is

*Affirmed.*

to defendant insurer where formerly insured plaintiff "paid no additional premium of any kind [and] did not accept the offer of renewal," and therefore "there was no contract in effect on the date of the subject loss"), *aff'd,* 83 Conn.App. 86, 847 A.2d 1095 (2004); *Suchoski v. Redshaw,* 163 Vt. 620, 660 A.2d 290, 292 (1995) (where insured failed to pay premium despite notice that insurance contract would expire, insurance contract did expire on scheduled date, and offer to reinstate lapsed insurance contract, which the formerly insured did not accept, did not "revive[] the expired contract"); *Wickes v. State Farm Mut. Auto. Ins. Co.,* 27 Utah 2d 350, 496 P.2d 267, 268–69 (1972) ("an insured can reinstate [a] policy [during a grace period] so as to relate back to the expiration date but only on condi-

tion that the premium be received within the [grace period]"); *Gitter v. Tennessee Farmers Mut. Ins. Co.,* 60 Tenn.App. 698, 450 S.W.2d 780 (1969) (where premium was not paid by renewal date nor within 15–day grace period, there was no coverage for accident occurring within the 15 days where insured paid premium 19 days after due date); *McClure v. State Farm Mut. Auto. Ins. Co.,* 113 Ga.App. 467, 148 S.E.2d 475 (1966) (offer by life insurer to provide continuous coverage if premium is paid within 10 days of the policy's expiration date, which offer is not accepted by the actual payment of the premium, does not create a binding contract of insurance, and insurer is not liable for a loss occurring during the 10–day period after the policy's expiration date).